## J. H. BALDWIN ET AL. V. A. K. ROOT.

### Decided April 5, 1897.

1. Legal and Equitable Title.

Patent issuing to the heirs of one deceased, who were eight in number, one who had previously acquired, by their transfer of the unlocated certificate with warranty, the interest of four of the heirs and that of the widow of their ancestor, owner of one-half interest as community property, became thereby vested with the legal and equitable title to one-half the land, and with the equitable title only to an additional one-fourth,—the four heirs not joining in the transfer taking the legal title to the remaining half, but taking the half of such half in trust for those holding under the transfer of the certificate. (Pp. 551, 552.)

2. Same—Unrecorded Deed—Notice—Burden of Proof—Legal Title.

Against suit by such purchaser, he being holder of the legal and equitable title to one-half interest, though by an unrecorded conveyance, one who relied upon a subsequent purchase from the heirs to defeat such half interest must prove, not only that he was a purchaser in good faith for a valuable consideration, but that he had no notice of the claim asserted under the first purchase. (P. 552.)

3. Same—Equitable Title.

But so far as the plaintiff relied upon his equitable title to one-fourth of the land, to which defendant opposed the legal title derived through purchase from the heirs before the recording of plaintiff's conveyance, the burden rested on plaintiff to show notice to defendant or such facts as would charge him with notice. (P. 552.)

4. Legal and Equitable Title—Limitation.

Defendant having held possession of the land for three years under conveyances from the patentees or their heirs, the title so derived was sufficient to support the three-years' statute of limitations against plaintiff's equitable interest of one-fourth of the land, from the time defendant obtained the conveyance of title

from all the heirs; but his purchase from a part of the heirs, with understanding that there were others interested, with whom he became tenant in common, did not have such effect. (Pp. 552, 553.)

**5. Same—Legal Title.**

As to the half interest, in which plaintiff held both the legal and equitable title, the title of defendant, obtained from heirs who had neither legal nor equitable title, was not a regular chain of transfer from the sovereignty of the soil nor color of title within the meaning of the statute, and was not sufficient to support limitation of three years. (P. 553.)

**6. Warranty—Subsequently Acquired Title.**

Title to land subsequently acquired by one who has conveyed it with warranty of title passes, eo instanti, to his warrantee, binding both the warrantor and his heirs, and subsequent purchasers from either. (P. 553, 554.)

**7. Three Years' Limitation—Break in Chain of Title.**

After conveyance of land by the owner, his subsequent deed to another will not support a plea of three years limitation. (Pp. 554, 555.)

ERROR to Court of Civil Appeals, Second District, in an appeal from Haskell County.

*H. G. McConnell, J. M. Baldwin & J. C. Baldwin,* for plaintiffs in error.—If the instrument under consideration took effect from its date (which was before the location of the land) the land afterwards having been located for and patented in the name of the grantees of the certificate, the assignee of the certificate in that event only obtained the equitable title to the land and the legal title to said land was thereby vested in the patentees, and the court erred in holding that the plaintiff who claimed under the assignee of the certificate held the legal title to the land. Culmell v. Borroum, 35 S. W. Rep., 943; Abernathy v. Stone, 81 Texas, 434; Herman v. Reynolds, 52 Texas, 395; Keys v. Railway, 50 Texas, 174; Goode v. Jasper, 71 Texas, 51; League v. Henecke, 27 S. W. Rep., 1049.

A patent to the heirs of the original grantee of a land certificate is title from the sovereignty of the soil to them, within the meaning of the statutes of limitations of three years, and this is true, though the patentees had no right to the land when the patent issued. League v. Rogan, 59 Texas, 438; Grigsby v. May, 84 Texas, 248; Burleson v. Burleson, 28 Texas, 417; Browning v. Pumphrey, 81 Texas, 163.

The issuance of the certificate to the heirs of Jonas Harrison, the location of the land for the heirs of Jonas Harrison, and the issuance of the patent to the heirs of Jonas Harrison, were sufficient to pass title from the government to the heirs of Jonas Harrison within the meaning of this statute. And a regular chain of transfers from said heirs down to the defendant in possession of said land will support a three years limitation. Grigsby v. May, 84 Texas, 248; League v. Rogan, 59 Texas, 429.

In order to constitute a break in a defendant's chain of title there must be a conveyance of the land by the owners thereof after its location, such a conveyance as will pass the legal title to the land, as announced in the cases of Allen v. Root, 89 Texas, 599; Gould v. West, 32 Texas, 339; Illies v. Frerichs, 32 S. W. Rep., 915; Long v. Brenneman, 59 Texas, 211.

When both parties claim from common source, the elder claimant hav-

ing only an equitable title and the junior claimant the legal title, the burden of proof is on the elder claimant to show that the junior claimant had notice of such equity at the time he purchased.   Biggerstaff v. Murphy, 3 Texas Civ. App., 363; Barnes v. Jamison, 24 Texas, 362; Hill v. Moore, 62 Texas, 610; Lewis v. Cole, 60 Texas, 341; Johnson v. Newman, 43 Texas, 642; McAlpine v. Burnett, 23 Texas, 650; Sanders v. Isbell, 24 S. W. Rep., 307.

It is necessary for a party relying upon an unregistered deed, against a subsequent purchaser, to prove that the latter had actual notice of the deed or prior conveyance.   Wethered v. Boon, 17 Texas, 143; Patty v. Middleton, 82 Texas, 586; Smith v. Westhall, 76 Texas, 509; Wilson v. Williams, 25 Texas, 55.

If the facts were sufficient to show that J. C. Baldwin had notice of the Huffman claim and that he was acting for J. H. Baldwin in looking after his landed interest in Haskell County, under a power of attorney, this would not be sufficient to charge J. H. Baldwin with knowledge of the facts known to J. C. Baldwin, as this was a personal transaction between them and, said agent having an interest in the transaction, his principal could not be affected by his notice.   Kuffman & Runge v. Roby, 60 Texas, 311; Harrington v. McFarland, 1 Willson's C. C., 292; Bank v. Cushman, 121 Mass., 490; Bank v. Davis, 2 Hill, 451; Fairfield v. Bank, 72 Me., 226.

*Foster & Scott* and *Oscar Martin,* for defendants in error.—The deed from Elinor Harrison et al. to Chas. Turner, dated November 10, 1855, conveyed the land and not merely the certificate, and hence conveyed the legal title to the land.   Duren v. Railway, 86 Texas, 291; Culmell v. Borroum, 35 S. W. Rep., 943; Satterwhite v. Rosser, 61 Texas, 173; Adams v. House, 61 Texas, 640; Abernathey v. Stone, 81 Texas, 430; Illies v. French, 32 S. W. Rep., 917.

A second vendee from the same vendor with notice of the previous sale, cannot prescribe under the three years statute of limitation.   Illies v. French, 32 S. W. Rep., 917; Grigsby v. May, 84 Texas, 248; Snowdon v. Rush, 69 Texas, 594; Paxton v. Mayer, 67 Texas, 99; Long v. Brennerman, 59 Texas, 213; Bailey v. Lans, 3 Texas Civ. App., 535; Angel v. Simmonds, 7 Texas Civ. App., 333.

The possession of a co-tenant will be presumed to be in right of the common title, and such tenant will not be permitted to claim the protection of the statute of limitations, unless it clearly appears that he has repudiated the title of his co-tenant, and is holding adversely to such claimant.   Phillipson v. Flynn, 83 Texas, 581; Moody v. Butler, 63 Texas, 212; Norton v. Collins, 1 Texas Civ. App., 276; Beall v. Evans, 1 Texas Civ. App., 447; Golson v. Fielder, 2 Texas Civ. App., 403; Land Co. v. Hyland, 8 Texas Civ. App., 613; Puckett v. McDaniel, 8 Texas Civ. App., 633.

Appellee holding the legal title to the land, the burden was on appellants to prove that they were bona fide purchasers for value without no-

tice.  Morton v. Lowell, 56 Texas, 645; Illies v. French, 32 S. W. Rep.

If, as contended by plaintiffs in error, Mrs. Elenor Harrison was neither an "heir" nor a "legal representative" of Jonas Harrison, and the eight children only were the patentees of the land and were the only persons included in the terms "heirs of Jonas Harrison," then under said transfer Chas. Turner became the owner of the legal title to one-half the land upon the issuance of the patent (four of the eight heirs having joined in said transfer and having warranted the title to 1333⅔ acres of the land—more than three-fourths of the land) and was the owner of the superior equitable title to the other one-fourth recovered by him, and if the statute of three years limitation did not apply to the one-half interest held under the legal title, it would not run against Chas. Turner or his vendee, A. K. Root, as to any part of the interest owned and recovered by A. K. Root, defendant in error herein, he being a cotenant with plaintiffs in error.  Rev. Stats. (1895), art. 3349; Angel on Limitation, sec. 434; Newman v. Bank, 5 Law. Rep. Ann., 468.

BROWN, ASSOCIATE JUSTICE.—A. K. Root sued J. H. Baldwin, J. C. Baldwin, J. L. Baldwin, and Ed. J. Hamner, in the District Court of Haskell County, to recover a tract of land situated in that county, patented to the heirs of Jonas Harrison, Sr., deceased, by virtue of unlocated balance certificate No. 2476-2577.  The plaintiff, however, really claimed only three fourths of the land.  E. J. Hamner disclaimed any interest in the land.  The facts as found by the Court of Civil Appeals, and shown by the undisputed evidence in the record, are, in substance, as follows:

Jonas Harrison, Sr., immigrated to Texas in 1835, with his wife, Eleanor, and eight children.  He died August 6, 1836, leaving surviving him his widow and their children—Margaret, Jonas, Jr., Jacob, D. C., John, Thomas J., William and Almira Harrison.  On the 4th day of April, 1839, the Board of Land Commissioners of Shelby County issued to the "legal representatives of Jonas Harrison" a certificate for a league and labor of land, and on July 1, 1852, the Commissioner of the General Land Office of the State issued to "the heirs of Jonas Harrison deceased" a certificate numbered 2476-2577 for the unlocated balance of the original certificate.  The unlocated balance certificate was located and surveyed in 1856 and patent issued in the name of the heirs of Jonas Harrison, deceased, April 6th, 1870.

A. K. Root claimed the land by virtue of the transfer of an interest in the unlocated balance certificate, made to Charles Turner, November 10, 1855, prior to the location of the said certificate, by Eleanor Harrison, surviving widow of Jonas Harrison, and five of his children, to-wit:  John, Thomas, William and D. C. Harrison and Almira Daniels, formerly Almira Harrison, who was a married woman at the time the transfer was made, but the certificate of her acknowledgment thereto was so defective that the instrument was void and no claim made under it.

By the transfer each of the parties conveyed all of his or her interest

in the certificate, but it was specified that the interest of Mrs. Eleanor Harrison was one-half and the interest of each of the other parties was 102⅔ acres. The instrument contains the following clause: "We hereby relinquish all of our right and title in and to the within described duplicate certificate, for the consideration before mentioned, unto the said Charles Turner and his heirs, and do by these presents forever warrant and defend the right and title to the 1333⅓ acres of the said certificate and the land surveyed by virtue of the same to the said Charles Turner, his heirs, etc., against the claims of all other person or persons."

The transfer was filed in the general land office November 13, 1863, and was recorded in Haskell County August 12, 1892. A. K. Root had a regular chain of transfers from Turner to himself which were duly recorded in Haskell County. Mrs. Eleanor Harrison died in 1866.

J. H. Baldwin, who is the plaintiff in error, claimed title to all of the land under the heirs of Jonas Harrison Sr. by the conveyances hereinafter stated. When the dates of the deeds are not given they are unimportant, being made after the patent was issued, and before the deed was made from J. C. Baldwin to J. H. Baldwin.

Margaret Harrison married William Thomas and they both died, leaving four children, two of whom—Benjamin Thomas and Almira Gaston—by power of attorney coupled with an interest to E. J. Hamner and deed from Hamner, conveyed to J. C. Baldwin their interest in the land. Eleanor Thomas, who married P. H. Harrison, and Mary A. Thomas, who married one Mays, conveyed their interests in the land to J. C. Baldwin, the deed specifying that it was a conveyance of the interest of the parties named, "let the same be little or much." P. H. Harrison, who was the heir of Jonas Harrison and who died in 1864, joined in the same deed, he being the husband of Eleanor Harrison.

Almira, who was also an heir of Jonas Harrison, and who married George K. Deaton, together with her husband and John Harrison, one of the children of Jonas Harrison Sr., conveyed each his interest to J. H. Baldwin by deed dated November 5, 1891, reciting that it was made in lieu of a prior deed made June 16, 1891, which had been lost, and the loss of it was proved by the testimony of J. C. Baldwin.

Jacob Harrison died in 1867, leaving one daughter—Eleanor—who married M. S. Ford, and she and her husband conveyed her interest in the land to J. C. Baldwin January 2, 1891, reciting "be it much or little."

Almira Harrison married Samuel Daniels, both of whom died leaving four children—W. G., John C., Richard and Kate Daniels. The latter married J. A. Wheeler, and all of them by deed and power of attorney to E. J. Hamner conveyed to J. C. Baldwin their interest in the land on the 10th day of October, 1890.

Thomas Harrison died in 1868, leaving one son—Samuel—who conveyed his interest in the land to J. C. Baldwin January 2, 1891.

D. C. Harrison and William Harrison jointly conveyed to J. C. Baldwin the interest of each in the land in controversy by deed dated Decem-

ber 5, 1890, which contained the statement that the interest of the parties was conveyed, "let it be much or little."

A general warranty deed from J. C. Baldwin to J. H. Baldwin, dated December 10, 1890, conveyed all of the land for a consideration of $5000 cash paid, the payment of which was proved to have been made. The trial judge in his findings of fact states that this deed conveyed the interest of J. C. Baldwin in the land, which we took to' have been an inadvertent omission on his part, as he made up the statement of facts himself, the parties having disagreed, and his conclusions of law were not based upon the terms of this instrument. We therefore conclude that we should consider this deed as it is set out in the statement of facts.

W. A. Huffman, who claimed under the transfer to Turner and under whom Root claims the land, paid all taxes upon it from 1885 to 1890 inclusive. J. H. Baldwin paid all taxes on the land from 1891 to 1895 inclusive. Baldwin has had the open actual exclusive and continuous adverse possession of the land since November 1, 1890. This suit was filed April 26, 1895.

At the time the deed was made by J. C. Baldwin to J. H. Baldwin the former lived in Haskell County and the latter in Fannin County. J. C. Baldwin was then the agent and attorney in fact for J. H. Baldwin, acting under a power of attorney which authorized him to sell and convey upon such terms as he might choose "any and all lands of whatsoever description that I own in Haskell County, Texas, or that I may hereafter buy in said county, either in partnership with said J. C. Baldwin or in my own separate name."

At the time and before E. J. Hamner conveyed the land to J. C. Baldwin the latter owned an abstract of title to lands in Haskell County, which showed the existence and registration of the several deeds from Turner to Huffman. J. C. Baldwin was an attorney at law and passed on the title to all land, including that in question, purchased by J. H. Baldwin in Haskell County, and in doing so acted with the consent and knowledge of J. H. Baldwin.

The Court of Civil Appeals finds that "the evidence fails to show that J. H. Baldwin did not have notice of the Huffman title now held by the plaintiff." That court failed to make any finding of fact as to whether J. C. Baldwin had actual notice of the existence of the title claimed by Root from the widow and heirs of Jonas Harrison deceased at the time that Hamner conveyed to him the land in controversy, which deed was dated October 10, 1890, and the court having failed to come to any conclusion upon the conflicting testimony upon that question, we must treat it as if there was no actual notice to J. C. Baldwin at the time.

When the State of Texas issued to the heirs of Jonas Harrison, deceased, a patent for the land in controversy, the legal title thereto vested, one-half in Margaret, Jonas, Jr., Jacob and Almira Harrison, four of the heirs of the deceased, and the other half vested in Charles Turner, as assignee of D. C., John, Thomas J. and William Harrison, by virtue of the

transfer and warranty therein contained, made by the last named heirs and their mother, Eleanor Harrison, to the said Charles Turner, hereinbefore copied.    Barroum v. Culmell, 90 Texas, 93 (37 S. W. Rep., 313.)

Mrs. Eleanor Harrison, in her community right as surviving wife of Jonas Harrison, Sr., deceased, was entitled to one-half of the land, but hers was an equitable right, and the heirs and their assignee who took the legal title under the patent received the same in trust for the person who owned the equitable title of Mrs. Eleanor Harrison.   Since Charles Turner acquired the equitable title of Mrs. Harrison in the entire survey and the legal title to one-half of it as above shown, it follows that he had united in him both a legal and equitable title to one-half of the land.

The heirs Margaret, Jonas, Jr., Jacob and Almira received the legal title of one-half of the land in trust for Charles Turner to the extent of one-half of the half received by them, which was claimed by him in right of their mother from whom he had purchased it.

The plaintiff, A. K. Root, was asserting against J. H. Baldwin, the legal and equitable title to one-half of the land, to which Baldwin opposed a claim as a purchaser in good faith for a valuable consideration and without notice of the unregistered transfer under which the legal title passed to Charles Turner, under whom Root claims.   To sustain this defense it devolved upon Baldwin to prove not only that he was a purchaser in good faith for a valuable consideration, but that he had no notice of the claim asserted by the plaintiff Root.   Watkins v. Edwards, 23 Texas, 443.

For one-fourth of the land sought to be recovered by the plaintiff, he relied upon an equitable title derived from Mrs. Eleanor Harrison through the unrecorded transfer from her to Charles Turner, to which Baldwin opposed the legal title derived by him from the four heirs of Jonas Harrison, who did not join in the transfer to Charles Turner.   To sustain this claim, the burden rested upon the plaintiff to show notice upon Baldwin or such facts as would charge him with notice of the outstanding equitable claim in favor of the plaintiff.   Barnes v. Jamison, 24 Texas, 362.

The District Court and Court of Civil Appeals held that as to the whole three-fourths of the land sued for the burden was upon J. H. Baldwin to show a want of notice of the unrecorded title, and for that reason gave judgment against him for the three-fourths of the land.   As to the one-fourth claimed through the equitable title of Mrs. Harrison, this ruling was error.   Judgment could not have been rendered upon this ground for more than one-half of the land in controversy.

The plaintiff in error contends that under the title proved and the facts, which are not disputed, the right of action asserted against him by the plaintiff below was barred by the statute of limitation of three years.   The question presented is, whether the title shown by defendant is such as will support the plea of three years limitation.   The facts found by the court show the possession to have been sufficient to establish the fact of occupancy for that time.

In determining this question we must apply a different rule of law to different parts of the plaintiff's cause of action. Root sought to recover of Baldwin in the District Court three-fourths of the land in controversy, and as we have before seen his title is equitable as to one-fourth and legal as to one-half of the land. The one-fourth, which is claimed by the equitable title, was derived from Mrs. Eleanor Harrison and was held by Margaret, Jonas Jr., Jacob and Almira Harrison, under the patent issued to them, in trust for Turner or those who claim from him. The title of the plaintiff in error derived from the last named heirs is sufficient to support the plea of three years limitation against the equitable interest asserted by the plaintiff if the facts established the possession necessary to make the bar complete. (Grigsby v. May, 84 Texas, 240.) But it appears from the evidence, without contradiction, that when the plaintiff in error bought the land from his brother, J. C. Baldwin, and when the latter purchased from Hamner, attorney for the heirs, each knew that he was not receiving the whole title to the land, but understood there were other parties interested with whom he became a tenant in common, against whom adverse possession was not asserted. The possession was not sufficient to support the plea of limitation except from the time that the title of all the heirs was acquired by the Baldwins, and possession held under claim of title to the whole of the land.

The title exhibited by the plaintiff in error as to the half of the land claimed under John, William, D. C. and Thomas Harrison was not, within the meaning of the statute, a regular chain of transfer from the sovereignty of the soil nor was it, within the meaning of the statute, color of title; and his claim of limitation based upon that title cannot be sustained as against the claim of the plaintiff for that half of the land.

There is considerable conflict in the authorities upon the question whether the title acquired by one who had previously conveyed the same land with covenants of warranty vests in the warrantee at the time that such title is subsequently acquired by the warrantor, or gives a right to the warrantee to have the subsequently acquired title transferred to him. This conflict grows largely out of the technical rules of the common law upon the subject of covenants in the different kinds of conveyances; which rules are in force in some jurisdictions and in others they are not, and the decisions upon this question in the different courts depend largely upon whether the technical rules referred to are observed by the court or disregarded. In this State the subject is regulated by statute, so far as the covenants which the law implies from the use of certain language is concerned. The rule most consistent with our system of laws upon this subject is that when one conveys land by warranty of title or in such manner as to be estopped to dispute the title of his grantee, a title subsequently acquired to that land by the grantor will pass eo instanti to his warrantee, binding both the warrantor and his heirs and subsequent purchasers from either. Robinson v. Douthitt, 64 Texas, 101; Lindsay v. Freeman, 83 Texas, 259; King v. Gilson, 32 Ill., 348; McCusker v. McEvey, 9 R. I., 528; Knight v. Thayer, 125 Mass., 25; Baxter v. Bradbury,

20 Me., 260; Douglas v. Scott, 5 Ohio, 195; Carver v. Jackson, 4 Pet., 80; Clark v. Baker, 14 Cal., 612; Gould v. West, 32 Texas, 354; Paxton v. Myer, 67 Texas, 96.

In Paxton v. Myer, cited above, a writ of attachment had been sued out and levied upon land as the property of the defendant in the writ; after which he sold the land to another party who went into possession. The attachment lien was foreclosed upon the land and it was sold under the judgment to satisfy that lien. The purchaser from the judgment debtor continued in possession for three years and more, when suit was brought to oust him from the possession of the land. He pleaded the statute of three years' limitation. This court, by Associate Justice Gaines, held that the defendant's title was not of that character which would support three years' limitation, because the sale under the judgment foreclosing the attachment lien related back to the time of the levy of the lien and took effect then, by which a hiatus in the title was created and destroyed its character as a regular chain of title.

In Carver v. Jackson, before cited, Justice Story delivering the opinion of the court, said: "If a man makes a lease by indenture of D. in which he hath nothing and afterwards purchases D. in fee and afterwards bargains and sells it to A. and his heirs, A. shall be bound by this estoppel; and that where an estoppel works on the interest of the lands, it runs with the land into whose hands soever the land comes; and an ejectment is maintainable upon a mere estoppel."

In the State of California, the rule which has been adopted by many if not the greater number of the American courts is embodied in a statute, which provides that when one who has conveyed land with a covenant of warranty subsequently acquires title thereto, "the new estate shall immediately pass to the grantee." In the case of Clark v. Baker, above cited, the court said: "The effect then of this provision upon the conveyance of premises in fee—such, for example, as that of Clark to Baker—is the same as if it were written upon its face that the grantor conveyed all the estate which he then possessed-or which he might at any time thereafter acquire." The authorities cited, we think, fully sustain the position that the effect of the patent issued by the State of Texas, in so far as it vested title in John, William, D. C. and Thomas Harrison, was in fact to vest the title in Charles Turner, their grantee, and that the said heirs who had before transferred their title to the certificate and the land located under it, in fact, never thereafter had any title or right to convey to any person.

It cannot be doubted that if John, William, D. C. and Thomas Harrison had not conveyed the land nor transferred the certificate before the patent was issued, but after the patent was issued to them had conveyed their interest in the land to another before Baldwin or the person under whom he claims bought from them, there would have been such a break in the chain of title that it would not sustain a plea of three years' limitation. (Wright v. Daley, 26 Texas, 731; Harris v. Hardeman, 27 Texas, 249; Veramendi v. Hutchins, 48 Texas, 531; Grigsby v. May,. 84 Texas, 240.).

The fact that the title conveyed by the State in the name of the heirs of Jonas Harrison passed immediately to Charles Turner, had the same effect upon the chain of title as if it had first vested in the heirs and had been immediately by them conveyed to Turner. The plea of limitation as against the one-half of the land claimed by the plaintiff Root under the heirs of Jonas Harrison was not sustained by the title established by the defendant Baldwin.

Because the trial court and Court of Civil Appeals erred in holding that the burden rested upon J. H. Baldwin to prove want of notice of the title claimed under Turner, as to all the land, the judgments of said courts are reversed and the cause is remanded.

*Reversed and remanded.*