## WAGNER v. GEISELMAN.

(Court of Civil Appeals of Texas. Galveston. April 4, 1913. Rehearing Denied April 24, 1913.)

**1. APPEAL AND ERROR (§ 219\*)—ADOPTION OF TRIAL COURT'S FINDINGS.**

Where the trial court's findings of fact were not objected to, they would be adopted by the Court of Civil Appeals, although such findings were not requested.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1315, 1317, 1320, 1322, 1323; Dec. Dig. § 219.\*]

**2. TRIAL (§ 396\*)—FINDINGS—CONFORMITY TO EVIDENCE.**

The trial court's conclusions of law and fact must be based upon the evidence introduced on the trial, and not upon independent investigation and search for evidence by him.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 935–938; Dec. Dig. § 396.\*]

**3. APPEAL AND ERROR (§ 527\*) — RECORD — MATTERS TO BE INCLUDED.**

Where the trial court in overruling a motion for a new trial made additional findings, such findings were not a part of the record and could not be considered for any purpose.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2381–2383; Dec. Dig. § 527.\*]

**4. ESTOPPEL (§ 28\*)—EFFECT OF ANCESTOR'S COVENANT AS AGAINST HEIR.**

Where a grantor's daughter, who inherited such title as he had to a tract of land, purchased a paramount title, the title did not inure to the benefit of a grantee of a part of such tract under her father's covenant of warranty; his rights being limited to a recovery against the daughter on the warranty to the extent of the value of any property inherited from her father.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 68; Dec. Dig. § 28.\*]

**5. TENANCY IN COMMON (§ 20\*)—ACQUISITION OF PARAMOUNT TITLE.**

Where the owner of a tract of 127 acres conveyed a lot therein, his daughter, who inherited the part not conveyed, was not a tenant in common with the grantee, and hence a paramount title acquired by her did not inure to the benefit of the grantee.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 60, 61; Dec. Dig. § 20.\*]

**6. APPEAL AND ERROR (§ 1008\*)—REVIEW—QUESTIONS OF FACT.**

In trespass to try title against a person claiming under a conveyance of 500 acres of land or more and being all of one-third of a league not theretofore sold, where the circumstances strongly suggested that the land in question had theretofore been sold by contract to plaintiff's remote grantor, although not deeded to him until afterwards, but did not point unmistakably to such a conclusion, whether it was so sold was a question of fact, and the trial

court's refusal to find such a sale would not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3960, 3962–3969; Dec. Dig. § 1008.\*]

**7. JUDGMENT (§ 743\*) — CONCLUSIVENESS — PERSONS BOUND.**

A judgment in a suit to remove a cloud against the executor and heirs of B. did not affect parties who had acquired B.'s title prior to the institution of such suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1252, 1253, 1275–1277, 1284; Dec. Dig. § 743.\*]

**8. NEW TRIAL (§ 102\*)—NEWLY DISCOVERED EVIDENCE—DILIGENCE.**

Where an action of trespass to try title was commenced in April, 1905, and tried in January, 1912, it could not be said that the trial court abused its discretion in denying a new trial for newly discovered evidence, consisting of public records of the same court, for lack of diligence.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 207, 210–214; Dec. Dig. § 102.\*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Trespass to try title by J. F. Wagner against M. P. Geiselman. Judgment for defendant, and plaintiff appeals. Affirmed.

E. T. Chew, of Houston, for appellant. W. F. Tarver, of Houston, for appellee.

REESE, J. J. F. Wagner instituted this action in trespass to try title against M. P. Geiselman to recover lot No. 2 in block No. 52 in Foster's addition to the city of Houston. The lot is a part of the Harris third of a league, and part of a tract of 127 acres conveyed by Harris to Richey; the title afterwards coming to J. E. Foster. Defendant pleaded not guilty and the statute of limitation of three, five, and ten years. Plaintiff, by supplemental petition, pleaded estoppel against defendant to set up the title under which he claims on grounds which will hereafter appear. The suit was instituted in 1905, and tried January 3, 1912. Trial without a jury resulted in a judgment for defendant, from which plaintiff prosecutes this appeal.

[1] The trial court prepared and filed conclusions of fact and law. It does not appear from the record that any request was made for such findings; but no objection is made to their consideration on this ground, nor is any objection made to any of the fact findings by either party. We feel justified, therefore, in adopting the conclusions of fact, so far as material.

[2] Mixed in with the conclusions are observations of the district judge which form part of such fact conclusions, and are omitted. A considerable part of these conclusions appear, from the statement of the judge, to be the result of independent investigation and search for evidence, made by him, and not based upon evidence introduced on the trial. These cannot properly form

any part of such conclusions, which are properly only the conclusions of the court from the evidence introduced on the trial. However, no objection is made by either party to the consideration of these extrajudicial conclusions. They do not appear to be material. So far as material, the conclusions are as follows:

"S. M. Harris owned a third of a league adjoining the corporate limits of the city of Houston, and some of it probably was inside the corporate limits.

"(2) Beginning on the 17th day of October, 1838, and continuing on down through 1839, 1840, 1847, 1848, 1851, and 1852, he sold off various tracts of 100 acres and 50 acres, and on April 3, 1856, he made a deed to Paul Bremond, describing the land as follows: '500 acres of land or more, lying partly within the corporate limits of the city of Houston, and on the north side of Buffalo Bayou, bounded on the west by lands sold to Dobie and the John Austin tract, and on the east lands originally belonging to D. Gregg, it being part of the headright of Sam Harris of a third of a league, and all of said one-third of a league not heretofore sold is conveyed by the said Harris.' This deed was recorded on April 4, 1856, in the deed records of Harris county.

"(3) It was not made clear to me upon the trial what lands he had sold, so in order to advise myself in the premises, I went to the records of one of the leading abstract companies and got a consecutive list of the transfers and at the time the deed was made to Bremond, who got the land from Harris, the latter party, Harris, being the source from which both parties derive their title, 100 acres had been conveyed to one Reynolds on the 17th day of October, 1838, and it adjoins the Austin on the west, that is to say, its west line, beginning at Buffalo Bayou, was coincident with the east line of the John Austin to the extent, approximately, of halfway up said west line of the Harris survey, and directly north of the Reynolds land, and of the same width as it and the Richey 127 acres, which had not been conveyed when the deed from Harris to Bremond was made. The next tract sold was that of April 19, 1839, of 100 acres to Dobie; so the 500 acres 'or more' sold to Bremond did in fact touch or reach the east line of the Austin which is the west line of the Harris and the north end of the Reynolds out to the north end of the Harris survey, and it did go east to the west line of the D. Gregg land, which west line was coincident with the east line of the Harris one-third of a league. It will be seen from the map that the Dobie 100 acres lies between the Paul Bremond 500 acres and the Reynolds for the full length of the Reynolds and for a part of the way between the Bremond and the Richey 127 acres.

"(4) The record shows that at the time Harris made the deed to Bremond he had sold 800 acres of the land out of his third of a league, down to January 27, 1852, but the deed to Bremond is recorded in Book P. p. 623, of the Records, while the two last deeds before that, each for 100 acres, one made May 23, 1851, and one January 27, 1852, were not recorded until later, as the first appears in volume Q, p. 315, and the other volume V. p. 683; but counting in those two deeds the whole amount of land that Harris had sold out of his third of a league up to the time of making the deed to Bremond was 800 acres, six 100-acre tracts, and four 50-acre tracts, therefore he had left 676 acres.

"(5) The deed to Benjamin Richey, under whom the plaintiff claims, was made on the 23d day of December, 1856, but was not recorded until August 15, 1857.

"(6) Counting the Bremond conveyance at just 500 acres, for the purpose of a statement, he sold altogether, including conveyances made in 1858 and 1860 and 1863, 1,440 acres, and if there be added to that the 127 acres which he sold Richey, in 1856, but which was not recorded until 1857, he sold altogether out of the tracts 1,567 acres, or 91 acres more than there was in the whole survey.

"(7) It will be seen from these figures that, if the Bremond conveyance had been calculated at only 500 acres, he would have had 176 acres left after he sold to Bremond, or 49 acres more than necessary to make up the 127 acres which he sold to Richey; but his deed to Bremond called for 500 acres 'or more' and described it as being all the land not heretofore sold and conveyed by him.

"(8) Bremond lived until 1885, and his estate was administered on in this county, and the property covered by the deed for 127 acres seems to have never been inventoried as a part of his estate; or at least the inventory called for 500 acres, and the lot in controversy is in the south end of the 127 acres.

"(9) A large part of the estate of Bremond passed into the hands of the executrix of the estate of one A. P. Lufkin by foreclosure, and the Lufkin heirs and the Bremond heirs made deeds to the 500 acres, and the title passed into the hands of James A. Baker and George L. Porter.

"(10) There appeared to have been Richey and J. E. Foster eleven conveyances, and J. E. Foster, in 1874, divided the property covered by the 127 acres into city lots and blocks, some of them in the extreme northern or northeastern end of the city and some perhaps beyond the city limits, and through a lottery scheme he sold the property divided into lots, those drawing certain numbered tickets getting certain lots, and one Miss Sternenberg drew one of the numbers and received one of the lots, a conveyance being made to her in the ordinary form, and that

lot passed down from her to the plaintiff in this case by a regular chain of title.

"(11) About the 14th day of September, 1898, James A. Baker and George L. Porter conveyed by special warranty deed, for a consideration which I find was not full value of the property, the 127-acre tract platted by Foster into his said addition (which was the same land conveyed by Harris to Richey) to F. S. Burke, and Burke, who was an attorney at law and a solvent man, at once conveyed all of the blocks, except Nos. 53 and 54, to Miss Violet Foster, the daughter of J. E. Foster, who had died some years before, and the block 52, in which this lot is situated, was among the lots conveyed by Burke to Miss Foster, and he retained lots 53 and 54, and Miss Foster conveyed the lot to the defendant, Geiselman, who had his title examined, and who paid full value for the property he bought, which was the entire block 52, and I find that he purchased in good faith, and I also find that Louis Stahl, who bought from Miss Sternenberg, afterwards Mrs. Penton, and by whom the lot sued for was given to the plaintiff, purchased in good faith.

"(12) There is no limitation in the case, so it is not necessary to refer to the question of possession and improvements; but the defendant had had the property fenced since his purchase.

"(13) It was agreed that Foster sold a great many of the lots, just as he did to Miss Sternenberg, and that many of the parties went into possession, and that either they or their vendees or those who were claiming under their vendees are still in possession, and there has been no attack made upon their title, and that the Foster estate had been administered upon and the property of 127 acres was administered as a part of his estate, or at least so much of it as he had not sold prior to his death.

"(14) I find that the plaintiff has paid taxes on the lot in controversy as far back as the year 1896, and that the defendant has paid taxes on the property regularly from 1901 up to this time, and that on miscellaneous lots and blocks in the 127 acres, or the Foster addition, parties claiming lots through and under Foster have paid taxes on them since 1874. This, however, does not apply to the lot in controversy, finding as to taxes upon which is made above in the first part of this paragraph."

[3] Appellant filed a motion for a new trial upon the ground, among others, of newly discovered evidence. This was overruled by the court. The court thereupon prepared and filed certain "findings" which are in the record. These findings are objected to by appellee as forming no part of the record. They are properly no part of the record and cannot be considered for any purpose. The court overruled the motion for a new trial, and that was the end of the matter so far as the trial court was concerned. Appellant refers largely to these findings in support of some of the assignments of error, and to the newly discovered evidence. Obviously this can only be considered by the court in determining whether the trial court erred in overruling the motion for a new trial.

[4] The first assignment of error is based upon the assumption that the court found in the eleventh finding of fact, and that the uncontradicted evidence showed that Violet Foster inherited as heir of J. E. Foster, her father, all of the unsold portion of the 127-acre tract originally sold by Harris to Richey and which afterwards was conveyed to Foster, and upon this assumption as to the facts, that when she procured through her attorney, F. S. Burke, the deed from Porter and Baker, the title thus procured inured to the benefit of the vendee of J. E. Foster, Miss Sternenberg, under Foster's warranty of title, and to the vendee of Miss Sternenberg, the appellant. In the statement under the proposition appellant refers for support partly to the findings of the trial court on the motion for new trial, to which reference has been made and which cannot be considered. In the eleventh finding of fact the court only finds that Violet Foster was the daughter of J. E. Foster, and there is no finding there, nor elsewhere in the conclusions of fact, that she inherited the unsold portion of the 127 acres from her father. An examination of the statement of facts shows that even this finding is not supported by the evidence, as there is no evidence that Violet Foster was the daughter of J. E. Foster. However, as there is no objection to the conclusions of fact, the finding that Violet Foster was the daughter of J. E. Foster must be accepted. It then appears that Harris sold to Bremond all the unsold portion of the Harris third of a league survey, which included the 127 acres which he subsequently sold and conveyed to Foster. Bremond therefore had the title to this 127 acres, which afterwards passed into Baker and Porter. When afterwards this title was acquired by Violet Foster, there is no principle of law or equity under which this title inured pro tanto to the holder of the title, under warranty deed from J. E. Foster, of the lot in controversy. Even if she had inherited from her father such title as he had to the 127 acres, this would not prevent her acquiring for her own benefit the superior title of Baker and Porter. The principle that if A. conveys to B. by warranty deed, and subsequently acquires a title superior to that thus conveyed, it passes by estoppel to his grantor, does not apply to this case. The doctrine is well established. Baldwin v. Root, 90 Tex. 553, 40 S. W. 3, and cases cited. But it does not apply here. Violet Foster did not acquire this lot from her father by inheritance, at all events; the only title she ever had to it is the title she got from Baker and Porter. The precise question presented by this assignment was de-

cided adversely to appellant's contention by this court in Cleveland v. Smith, 113 S. W. 550. The right of appellee to recover against Violet Foster on the warranty of her father to the extent of the value of any property she may have inherited from her father is the extent of the right of appellee, and would not affect the title of appellant. In this case there is no evidence that would support even such a right, as there is no evidence as to the value of such inheritance. However, that principle of law could not avail appellant here in any case. The assignment is overruled.

[5] Nor can the second assignment of error be sustained. The basis of the assignment is that Violet Foster was the tenant in common with Miss Sternenberg or her vendees of the lot in controversy. This could not be. J. E. Foster conveyed this lot, or such title as he had, entire, and there could have been no tenancy in common.

[6] The circumstances shown to exist probably raised the issue of the existence of some sort of contract of sale from Harris to Richey of the 127 acres prior to the sale of the entire unsold portion to Bremond, which was known to Bremond prior to his purchase. The circumstances are strongly suggestive of such a contract, and that Bremond knew of it. Hermann v. Thomas, 141 S. W. 574. But such presumption was one of fact, and we cannot say that the court erred in not so finding, as is complained of in the third assignment of error. The evidence on this point does not point so unmistakably to such a conclusion as to compel such a finding. If the case had been with a jury, and upon submission of the issue the jury should have found against appellant's contention on this point, we would not have been authorized to set such verdict aside. The circumstances in Hermann v. Thomas, supra, were of a strongly similar nature; but the most that was said in that case was that they were sufficient to present the issue of a contract of sale from Sarah Goodman to Woodyard and Morgan of the 100 acres prior to the conveyance of the unsold balance to Bourgeois. It will be seen from the court's conclusions of law in this case that it declined to presume the existence of such contract of sale, from the evidence. We cannot say that this was error. It must be noted that in support of this assignment appellant again draws largely upon the court's findings upon overruling the motion for a new trial, which cannot be considered.

[7] The fourth assignment of error is based entirely upon the newly discovered evidence set out in the motion for a new trial and the court's so-called findings thereon. As these cannot be considered, the assignment must also fail. But independently of this the evidence shows that the suit against the executor and heirs of Bremond, instituted by Violet Foster, to recover the 127 acres or to remove cloud from her title, was instituted after title had passed out of the Bremond estate. According to the statement in appellant's brief, this suit was instituted November 26, 1888. So there was no title left in the executor or heirs of Bremond, and Violet Foster got no title by her judgment. This probably accounts for the ease with which she procured this judgment. So that even if this newly discovered evidence, which was made the basis for the motion for a new trial, had been before the court, and properly in this record for our consideration, it would not have helped appellant. There was nothing in such judgment to prevent Violet Foster from acquiring for her own benefit, as against appellant and his vendors, the title of Baker and Porter.

What we have said disposes also of the fifth assignment of error, which is overruled.

By the sixth assignment of error appellant complains of the action of the court in overruling the motion for a new trial on the ground of newly discovered evidence. This evidence consisted of the pleadings and judgment in the case of Violet Foster against the executor and heirs of Bremond heretofore referred to. In attaching so much importance to this evidence the trial court overlooked the fact that at the date of the institution of the suit the title had passed out of the estate of Bremond. Even if this were not true, however, we do not think that the judgment would have had the effect of passing to appellant or his vendors by estoppel the title afterwards acquired by Violet Foster from Baker and Porter. Cleveland v. Smith, supra.

[8] But the motion was properly overruled on the ground that appellant had not shown such diligence in discovering the existence of this evidence and producing it upon the trial as to entitle him to the new trial. Certainly we cannot say that there was such abuse of the discretion vested in the trial court in such case as would authorize us to reverse the judgment and grant appellant's motion for a new trial on this ground. This action was instituted April 5, 1905, and tried in January, 1912. The evidence was afforded by the public records of the district court of Harris county. Whether proper diligence would have enabled appellant to discover it before the trial could be better judged by the trial court than by this court, so, both on the ground that the evidence would not have availed appellant and that there had not been sufficient diligence, we cannot say that the court committed error in overruling the motion for a new trial.

We find no error in the record requiring reversal, and the judgment is affirmed.

Affirmed.