### Paul M. Lewis et al. v. R. L. Brown.

#### Decided April 19, 1905.

**1.—Estoppel—Reliance and Action upon Representation Necessary.**

To create an estoppel by representations made it is essential not only that the representations be believed and relied on, but they must induce action on the part of the one claiming the benefit of the estoppel, and he must have been led thereby to change his position for the worse.

**2.—Same—Agent—Authority to be Shown.**

Where the representations, as to the ownership of land, relied on to create an estoppel against the owner, were made by an alleged agent, it must be shown that he was acting for the owner and had authority to bind him by the representations.

**3.—Same—Fact Case—Boundary.**

Evidence considered and held not to show that a purchase of 850 acres of land was induced by representations as to a certain 70 acres being part of the survey and included in the purchase, and not to sustain a plea of estoppel, nor to raise the issue of boundary.

**4.—Trespass to Try Title—Estoppel—Title Held in Trust.**

One who holds the legal title to land by a deed which is in reality a conveyance to him in trust for another, may maintain an action of trespass to try title to recover the land, and grounds given for the failure of proof to establish an adverse title by estoppel would apply with the same force whether plaintiff held the land in his own right or in trust.

Appeal from the District Court of Bosque. Tried below before Hon. Nelson Phillips, special judge.

*H. J. Cureton* and *C. M. Cureton,* for appellants.—1. Where the vendor or his agent actually points out land to be embraced in the deed and to be conveyed, he is estopped from claiming title to the land so

pointed out as against his vendee. Meade v. Wearing, 35 S. W. Rep., 308; Meade v. Jones, 35 S. W. Rep., 310; Meade v. Boone, 35 S. W. Rep., 487; Chestnut v. Chism, 48 S. W. Rep., 553; Nichols-Stewart v. Crosby, 29 S. W. Rep., 381; Colonial & U. S. Mtg. Co. v. Tubbs, 45 S. W. Rep., 622; Windus v. James, 19 S. W. Rep., 873; Guest v. Guest, 12 S. W. Rep., 831; Myer v. Ramsey, 46 Texas, 374; Henry v. Thomas, 74 S. W. Rep., 599; 11 Am. & Eng. Ency. Law (2d ed.), 422, 429; Kirk v. Hamilton, 102 U. S., 68-79; Lynch v. Mer. Trust Co., 18 Fed. Rep., 486; Baupland v. McKeen, 70 Am. Dec., 116.

2. Where a landowner marks the boundaries of his land and adjoining landowners buy with reference to the same, such landowner is estopped to deny that the boundaries so marked by him are true. Anderson v. Jackson, 13 S. W. Rep., 30; New York & Texas L. Co. v. Gardner, 32 S. W. Rep., 786; Welder v. Hunt, 34 Texas, 45; Holland v. Thompson, 35 S. W. Rep., 20.

*Geo. P. Robertson,* for appellee.—The court did not err in giving the jury a peremptory instruction to find for the plaintiff, because the uncontroverted evidence shows title in plaintiff, and that no grounds for estoppel existed. Soape v. Doss, 18 Texas Civ. App., 649; Waggoner v. Dodson, 73 S. W. Rep., 517; Smith v. Bunch, 73 S. W. Rep., 559.

FLY, ASSOCIATE JUSTICE.—This is a suit in the form of trespass to try title instituted by appellee against Paul M. Lewis, J. F. Early and Jesse Anderson, the land being seventy acres out of the W. T. Charles survey. Appellants answered by pleas of not guilty and limitation of three, five and ten years. A trial by jury was had, and a verdict for appellee was instructed by the court.

The uncontroverted evidence disclosed that the land in controversy was a part of the W. T. Charles survey, and that the record title to it was in appellee. In May, 1899, J. M. Webster bought 850 acres of land out of the west half of the Reaville survey, which lies immediately north of the Charles survey, from the Scottish American Mortgage Company. The land was sold by metes and bounds, the beginning point being the northeast corner of the Morton survey, which lies directly west of the Reaville survey. The following plat shows the location of the land in controversy, being that marked "70a," and included within the letters A, B, C and D:

RICHARD STOCKTON SURVEY.

The evidence shows, beyond doubt, as above stated, that the land in controversy is a part of the Charles survey. It is the contention of appellants that appellee is estopped from asserting a claim to the land by his voluntary act, through his agent Slaughter, in representing that the land was the property of the mortgage company and included in the tract of 850 acres bought by Webster from the mortgage company. It is disclosed by the facts that Slaughter, who was the land inspector of Brown Brothers, a firm of which appellee was a member, pointed out the land to Webster that was to be sold to him by the mortgage company, and pointed out the 70 acres in controversy, and represented it to be a part of the land.

There is authority for the proposition that if the true owner of property, which is in the actual possession of another, represents that the property belongs to that other person, and such person to whom the representation is made is thereby induced to purchase the property from the person in possession thereof, he will be protected from any injury that might result, and the party making the representation will be estopped from claiming the property. (Bigelow on Estoppel, p. 560; Nichols v. Crosby, 87 Texas, 443; Burleson v. Burleson, 28 Texas, 383.) In order to apply that rule in this case, it must appear that Slaughter was acting for appellee, and had the authority to bind him in representations as to the ownership of the land in controversy. While it does not appear from the record in this case that Slaughter had any such authority, or that his representations could have bound anyone but the mortgage company for whom he was acting, still, if it be conceded that he had such authority, the evidence fails to make out a case of estoppel.

In order to create an estoppel, it is absolutely essential not only that the representations should have been believed and relied upon, but they must have induced action upon the part of the person claiming the benefit of the estoppel. Not only must the representation have been the cause inducing action on the part of the person pleading estoppel, but he must have been led thereby to change his position for the worse. As said in the case of Scoby v. Sweat (28 Texas, 713), and reiterated in Masterson v. Little (75 Texas, 682): "No estoppel can arise without proof of wrong on one side and injury suffered or apprehended on the other, nor unless the injury be so clearly connected with the wrong that it might and ought to have been foreseen by the guilty party. When no injury results from a misrepresentation, its decision belongs to the forum of morals, and not to the judicial tribunals." Webster was not shown to have purchased the land from the mortgage company because of the representations of Slaughter, but, on the other hand, it is a clear inference, from the facts, that the purchase would have been made if the 70 acres had not been represented to be a part of the tract of land. The soil and location of the 70 acres were not shown to be of any particular value, or to be more desirable than that of any other parts of the tract. It is true, Webster swore that Slaughter told him that the land could be easily put in cultivation, but not more easily than any other part of the tract. There was nothing shown in connection with it that could have turned a decision in favor of the purchase of the tract.

The evidence also fails to show that the representations caused any injury to Webster. He contracted for 850 acres of the Reaville survey at $1.50 per acre, and he got 850 acres out of that survey. He made no valuable improvements on the land, the only proof on that score being that a small part of it had been put in cultivation and some brush cut on it. No injury having resulted, estoppel was not created by the representations of Slaughter.

Had there been an agreement between appellee and Webster as to the boundary line between their land there might be some basis for the contention that the question of boundary had been settled. There was no such agreement. An adjustment of boundaries between appellee and Webster was never attempted. It would be a palpable absurdity to apply the rules as to agreed boundaries to a case with the facts like this. Ap-

pellants are not seeking an adjustment of boundaries between their land and that of appellee, but they are seeking to hold the whole of the land belonging to appellee. It would be a singular agreement of boundary between two tracts that gave both tracts to one of the parties to the agreement. There is no foundation for title in appellants unless it be by estoppel, and, failing to show estoppel, a verdict for appellee was properly instructed.

Two witnesses positively identified the point marked "D" on the plat as being the southwest corner of the Reaville and the northwest corner of the Charles survey, and testified that the line running from that point to the one marked "F" was clearly marked. N. R. Morgan, a witness for appellants, did not contradict the statement of the two witnesses, who were surveyors. He swore: "I found a marked line located north 60 east over there (indicating D, C and F). I surveyed that line myself. I found a live oak there at D, but couldn't find any mark on it. This tree, I suppose, was as large as a water bucket." The witness further stated: "I satisfied myself as to the line between the Reaville and the Williams. I went up the east line to the branch to see if the Reaville was short. I found from the branch, coming south, that there was an excess, and, if extended on down, it would be a considerable excess. I found also tha 'hat would make the Williams proportionately short. The northwest coiner of the Williams and the northeast corner of the Charles are called to be one and the same corner." The witness then stated that he had represented owners of the Williams survey in an agreement with Anderson as to the boundary line between that survey and the Reaville survey, and they had fixed the line at the place claimed to be correct by appellee. The witness said: "I was representing the owners of the Williams survey up there at that time. Running from this corner across this way (indicating from D to F), I found signs of a marked line there. I don't remember whether it was at the time, or before the final judgment, Anderson and I came to an agreement about that line. He agreed, as between him and Roach and Linstead, to adopt that marked line; he insisted all the time that he bought that, but that the line was up there, and that he did not have it by limitation." That evidence did not, as claimed by appellants, raise any issue as to the location of the boundary line between the Charles and Reaville surveys. The Charles was the older survey.

Even if the deed to appellee by Brooks, through which he claims the land, was in reality a conveyance to him in trust for the mortgage company, the suit of appellee would not be defeated. He could maintain the suit in his own name, although he may be holding the land for the mortgage company. The grounds given for the failure of the proof to establish a title by estoppel would apply with the same force, whether appellee held the land in his own right or in trust for the mortgage company.

Appellants claim that "the superiority of the particular strip in controversy here over the remainder of the pasture, for its tillable utility, was pointed out to Webster by Slaughter, and was one of the inducing causes of the sale, and for which he paid his consideration." There is nothing in the record to sustain that claim. Slaughter did not mention the superiority of the 70 acres of land over the rest of the land, and there

is nothing to indicate that the 70 acres of land had any influence in determining Webster to buy the land. Neither does the evidence show that Webster cleared up the whole of the 70 acres, but only a part in one corner. He put no improvements on the land.

We conclude that the judgment should be affirmed.

*Affirmed.*

Writ of error refused.