MORRIS et al. v. SHORT.

(Court of Civil Appeals of Texas. Texarkana. Nov. 7, 1912. On Motion for Rehearing, Dec. 5, 1912.)

1. DEEDS (§ 114*)—CONSTRUCTION—DESCRIPTION OF PROPERTY.

A description of land in a deed as 1,000 acres of land undivided and a part of a larger tract, situated in certain counties on the headright surveys of D. and others, for a more full description of which reference was made to a recorded deed, was sufficient to convey 1,000 acres in whatever portion of such larger tract belonged to the grantor.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329; Dec. Dig. § 114.*]

2. APPEAL AND ERROR (§ 842*)—REVIEW—CONCLUSIONS OF LAW.

The trial court's construction of a deed is not binding on appeal, since it is a conclusion of law rather than a finding of fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3316–3330; Dec. Dig. § 842.*]

3. DEEDS (§ 95*)—CONSTRUCTION—LANGUAGE OF INSTRUMENT.

A deed which is not attacked for fraud, accident, or mistake should be construed according to its terms.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 238, 241–254; Dec. Dig. § 95.*]

4. DEEDS (§ 120*)—CONSTRUCTION—LANGUAGE OF INSTRUMENT.

A deed, absolute on its face, cannot be construed as a contract for a contingent interest in the land, in the absence of evidence of a contract different from that imported by the terms of the deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 375–393, 401, 407–412, 416–454; Dec. Dig. § 120.*]

5. ESTOPPEL (§ 39*)—PROPERTY CONVEYED—AFTER-ACQUIRED TITLE.

Where a deed contained no express warranty nor any language limiting the warranty against incumbrances implied from the use of the words "grant" or "convey" under Rev. St. 1895, art. 633, and the grantor at the time had no title, a title subsequently acquired by him vested immediately in the grantee by force of the implied warranty.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 108, 109; Dec. Dig. § 39.*]

6. COVENANTS (§ 96*)—COVENANT AGAINST INCUMBRANCES—"INCUMBRANCE."

A paramount outstanding title is an "incumbrance" within the meaning of a covenant against incumbrances.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 111–129; Dec. Dig. § 96.*

For other definitions, see Words and Phrases, vol. 4, pp. 3519–3527.]

7. ESTOPPEL (§ 38*)—PROPERTY CONVEYED—AFTER-ACQUIRED TITLE.

For an after-acquired title to pass to a grantee under a warranty of title, it is not necessary that the conveyance should have been upon a valuable consideration.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 99–107; Dec. Dig. § 38.*]

8. ESTOPPEL (§ 58*)—ELEMENTS—PREJUDICE TO PERSON SETTING UP.

Attorneys were not estopped from claiming that a deed to them conveyed an absolute title, by an answer, filed by them in a prior action, alleging that their client conveyed such land to take effect as a valid deed only in case he was successful in pending litigation, as against a subsequent purchaser who did not rely thereon and who paid nothing of value for his conveyance.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 144, 145; Dec. Dig. § 58.*]

On Motion for Rehearing.

9. JUDGMENT (§ 256*)—CONFORMITY TO FINDINGS.

A party to an action conveyed an interest in land, the title to which was in dispute, to his attorneys by a deed absolute on its face. It was claimed that it was intended only as a contract to convey one-half of the land recovered by him in that action. He recovered nothing in that action, but subsequently acquired title to such land. *Held*, that a finding by the trial court, in a subsequent action, that the attorneys were entitled to a part of the land, necessarily involved a finding that the conveyance was not on the contingency claimed, and hence the court erred in limiting their recovery to one-half of the land.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446–454; Dec. Dig. § 256.*]

Appeal from District Court, Upshur County; R. W. Simpson, Judge.

Trespass to try title by U. F. Short against M. L. Morris and another. From the judgment, defendants appeal, and plaintiff cross-appeals. Reformed and rendered.

John S. Barnwell, of Gilmer, and Morris & Pope and A. U. Puckitt, all of Dallas, for appellants. Warren & Briggs, of Gilmer, and U. F. Short, of Dallas, for appellee.

HODGES, J. This suit was instituted in the court below by U. F. Short, the appellee, in the form of an action of trespass to try title, against Morris and Crow, the appellants, for the recovery of a tract of 621 acres of land situated in Upshur county. The following is a statement of the substantial facts as we gather them from the briefs of counsel and from the record filed in the case:

Jas. B. Simpson is the agreed common source from which all the parties deraign title. In 1891 Jas. B. Simpson became insolvent. He was at the time the owner of 7,630 acres of land situated in Camp and Upshur counties, of which the land in controversy is a part. In order to place this property beyond the reach of his creditors, Simpson, on the 21st day of July, 1891, made a deed purporting to convey all of his land situated in those two counties to one Kennett Cayce. The deed recited a consideration of $11,500 paid in cash, and was afterwards placed of record in both counties. The facts, however, show that Cayce was a fictitious person and that no consideration in fact passed to Simpson. At the time this scheme was attempted, Simpson was indebted to the following creditors: Sam Thurmond, T. L. Torrans, the Bankers' & Merchants' National Bank of Dallas, and the National Park Bank of New York. None of these claims appear to have been secured by liens at that time.

On January 14, 1892, Thurmond recovered

a judgment against Simpson on his claim in the district court of Marion county for the sum of $924.96. An abstract of this judgment was filed in the office of the county clerk of Camp county on February 25, 1892, but none was filed in Upshur county. On the same date that Thurmond recovered his judgment Torrans also recovered a judgment against Simpson for the amount of his claim, which was something less than $1,-000. An abstract of this judgment was filed for record in the office of the county clerk of Upshur county on February 28, 1892.

On February 3, 1892, a power of attorney purporting to have been executed by Cayce to M. L. Robertson and acknowledged before Jas. B. Simpson was filed for record in Camp county. Robertson was a son-in-law of Simpson. On May 25, 1892, Robertson, claiming to act by virtue of this power of attorney from Cayce, executed a deed purporting to convey all of the lands described in the deed from Simpson to Cayce to the appellee Short, reciting a consideration of $5,500. On the same day Short executed a deed conveying all of the same land, except 200 acres, to W. D. Simpson, a son of Jas. B. Simpson. This deed recited a consideration of $4,250 paid in cash. According to the court's findings, all of these transactions were for the purpose of aiding Jas. B. Simpson to hold his property beyond the reach of his creditors, and no consideration was in fact paid in any of them.

On March 3, 1892, William Kelly sued Kennett Cayce in the district court of Dallas county on an account amounting to $6,-208.92, procured a writ of attachment, and caused it to be levied upon all of the lands described in the deed from Simpson to Cayce. The levies were made March 5, 1892. On October 10, 1893, Kelly recovered a judgment in his suit against Cayce and for the foreclosure of his attachment liens. The lands were subsequently sold under that judgment and purchased by Kelly, to whom the sheriff executed a deed.

In view of the fact that the trial court concluded that an agreement between Kelly, Short, and W. D. Simpson was entered into for the purpose of aiding Jas. B. Simpson to defraud his creditors, it may be proper to say in this connection that the various transactions between Simpson, Short, and Kelly, and the judgment recovered by Kelly against Cayce, and the sale thereunder, are not considered in this case in determining the rightful owner of the title to the land in controversy. They are here referred to simply for the purpose of showing the basis of the claims which gave rise to the litigation that arose thereafter and which is a part of the history of the case.

On February 22, 1892, the Bankers' & Merchants' National Bank of Dallas sued Jas. B. Simpson on its claim and procured a writ of attachment to be issued to Camp county, which was by the sheriff of that county levied upon the lands in both Camp and Upshur counties. A judgment was thereafter rendered in the bank's favor for $2,154 with the foreclosure of the attachment lien. An execution was issued on this judgment and placed in the hands of the sheriff of Camp county, who, on the 7th day of February, 1894, sold the lands in both counties; the Dallas bank becoming the purchaser. Previous to that time, on July 5, 1892, the same lands had been sold under the Thurmond judgment and purchased by the Bankers' & Merchants' National Bank of Dallas. Both of the above-mentioned sales are treated in this litigation as affecting only the lands in Camp county, inasmuch as the sheriff who made the sales had no authority to execute process on property in Upshur county. Hence it is not contended that either of the last-mentioned sales affected the title to the lands involved in this suit.

On January 16, 1893, the National Park Bank of New York recovered in the district court of Dallas county a judgment against Jas. B. Simpson for something over $50,000; but no process was issued thereon to Upshur county till 1897.

Shortly after the sale made on the 2d day of January, 1894, under the judgment procured by Kelly against Cayce, at which Kelly became the purchaser, H. S. Hepburn, who had been appointed receiver for the Bankers' & Merchants' National Bank of Dallas, brought a suit in the district court of Camp county to recover all of the Simpson lands situated in that county; the receiver claiming by virtue of the sales made under the Thurmond judgment as well as that in favor of the Bankers' & Merchants' National Bank. Wm. Kelly, U. F. Short, the appellee, and W. D. Simpson were made parties defendant in that suit. Kelly claimed the lands by virtue of the sheriff's deed under his judgment against Cayce. After that suit was instituted, Wm. Kelly, Jas. B. Simpson, and Short entered into a written agreement in which they undertook to make a common defense. The agreement was dated the 5th day of April, 1894. Jas. B. Simpson contracted in the name of W. D. Simpson, Jr., his son. The writing recited the fact that the above-mentioned suit was pending. The parties agreed to make a common cause, and it was provided that if they were successful Kelly should have the first 2,000 acres. If over 2,000 acres were recovered, then Short should have 200 acres. After Kelly and Short had received their respective portions, the balance, which the parties estimated at 3,000 acres, should belong to W. D. Simpson, and an equitable partition should be made between the parties. It was further stipulated that each of the parties was to furnish his own attorney at his own expense, and that the court costs should

be apportioned between them in proportion to their respective shares.

Shortly afterwards Wm. Kelly entered into a contract with Morris and Crow, the appellants in this cause, by which he engaged them to represent him in the litigation referred to in the written agreement. Kelly executed the following deed to Morris and Crow, dated the 23d day of May, 1894: "Know all men by these presents that I, Wm. Kelly, of Dallas county, Texas, for and in consideration of five thousand dollars to me in hand paid by Morris & Crow in certain services rendered me in recovering a debt due me by Kennett Cayce, have granted, sold and conveyed, and by these presents do grant, sell and convey to Morris & Crow, a firm composed of M. L. Morris and W. M. Crow, residing in Dallas county, Texas, one thousand acres of land, undivided and a part of a tract of land containing 7,630$^8/_{10}$ acres situated in the counties of Camp and Upshur, Texas." Then follows more particular description. "To have and to hold all and singular the premises together with all and singular the rights and appurtenances thereto in any wise incident or appertaining, unto the said Morris & Crow, their heirs or assigns, forever in fee simple."

This deed is the beginning and the basis of appellants' claim to an interest in the land in controversy. It appears from the testimony that Morris and Crow had represented Kelly in his suit in which he recovered a judgment against Cayce, and that they thereafter represented him in the future litigation regarding the validity of Kelly's claim to the land in controversy as well as that in Camp county.

The defendants mentioned in the suit instituted by Hepburn, receiver, filed a cross-bill asking for affirmative relief. An ineffective effort was thereafter made by the receiver to dismiss the case and prosecute substantially the same cause of action in the federal court. Hepburn afterwards resigned as receiver, and H. C. Weaver was appointed to succeed him. On the 8th day of December, 1896, Weaver, as receiver, conveyed to Short, the appellee, all of the interest claimed by the Bankers' & Merchants' National Bank of Dallas to the land there in controversy.

On February 12, 1896, W. D. Simpson, Jr., executed a deed to Sheppard & Jones, a firm of attorneys composed of Jno. L. Sheppard and J. F. Jones. That deed is as follows: "Know all men by these presents that I, Wm. D. Simpson, Jr., of the county of Dallas, state of Texas, in consideration of professional services rendered and to be rendered in the cases of H. S. Hepburn, Receiver, v. U. F. Short and Others, pending in the district court of Camp county, Texas, and in the United States Circuit Court at Jefferson, Texas, by Jno. L. Sheppard and J. F. Jones, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the said Jno. L. Sheppard and J. F. Jones of the county of Camp, state of Texas, all that certain lot, tract or parcel of land described as follows: An undivided one-third interest in all lands that this vendor may recover in the suit No. 1293, H. S. Hepburn, Receiver, v. U. F. Short and Others, now pending in the district court of Camp county, Texas, or that this vendor may recover in the suit of H. S. Hepburn v. U. F. Short et al., now pending in the United States Circuit Court at Jefferson; and special reference is here made to the pleadings in said cases for a particular and specific description of said land. It being understood, however, that should the court impose any charge upon this vendor's interest in said lands, that the vendees herein shall bear their one-third proportion thereof. And this vendor further covenants and agrees upon a recovery by him finally in the above litigation, that he will make to said vendees a warranty title to the proportion of lands herein conveyed by special warranty," etc.

After these conveyances the suit pending in the district court of Camp county was prosecuted on a cross-bill, with Kelly and others as the real plaintiffs, against Short as the real defendant. Kelly and his co-complainants abandoned the original form of the action and based their claim for relief upon an oral agreement which they claim was entered into between Short, Kelly, and Simpson, by which Short undertook to purchase from the receiver all rights to the property, for their benefit as well as his own. Upon a trial of that issue before the court a judgment was rendered in favor of Short, and this ended that litigation. It applied, however, only to the lands situated in Camp county, and did not include those in controversy.

On the 28th day of October, 1895, the Simpson lands in Upshur county, and which did include the lands here involved, were sold under an execution issued on the Torrans judgment. They were purchased by R. T. Torrans, and by him afterwards, on the 12th day of February, 1896, sold and conveyed to Thos. Kelly, who later conveyed them to Wm. Kelly. At the time of this transfer the suit in Camp county was pending as well as one involving the same issues in the federal court at Jefferson.

On May 13, 1897, an execution was issued out of the district court of Dallas county on the judgment theretofore recovered by the National Park Bank of New York against Simpson, and levied on the Upshur county lands. A sheriff's sale was afterwards made, and the lands purchased by F. M. Hayes, as receiver of the Ninth National Bank of Dallas. On June 8, 1897, Hayes filed suit in the United States Circuit Court of the Northern District of Texas at Dallas, in which he charged that the transactions and convey-

ances by which Kelly claimed to have obtained the land through Kennett Cayce were fraudulent and void because they were the result of a conspiracy entered into with Jas. B. Simpson to place the property beyond the reach of Simpson's creditors. It was also alleged that Kelly's purchase of the land in Upshur county from R. T. Torrans was made in furtherance of a like conspiracy with Jas. B. Simpson and for the latter's benefit. Upon those grounds the bill prayed for the cancellation of all those deeds. Answers were filed by Kelly and Morris and Crow. Subsequently A. P. Morey purchased from Hayes, the receiver, all of the interest which the bank owned by virtue of the sheriff's deed conveying to it the lands in Upshur county. Morey filed his bill, repeating in substance the previous averments of the receiver, and asked for the same relief. While this suit was pending, and on the 23d day of February, 1898, Kelly executed the following deed to Sheppard & Jones: "Know all men by these presents that I, Wm. Kelly, of the county of Dallas and state of Texas, for and in consideration of the sum of five thousand dollars to me in hand paid by Sheppard & Jones, a law firm composed of Jno. L. Sheppard and J. F. Jones, in legal services, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Sheppard & Jones, a firm composed of Jno. L. Sheppard and J. F. Jones, of the county of Camp, state of Texas, all that certain tract of land containing one thousand acres, undivided, and a part of the following described tract of land, to wit: Lying and being situated in the counties of Camp and Upshur," etc. Then follows the usual habendum clause with the general warranty. On February 4, 1898, Kelly executed a deed to W. T. Armistead, by which, in consideration of legal services, he sold and conveyed "all that certain tract of land containing 200 acres, undivided, and a part of the following tract of land," etc. Then follows a description of the lands situated in Upshur county. This deed contained the usual general warranty.

In March, 1902, a judgment was rendered in the suit of F. M. Hayes, Receiver, v. Jas. B. Simpson et al., in the federal court at Dallas, which finally disposed of that litigation. It is conceded that Morey, who purchased from Hayes, the receiver, was the representative of Short, and that Short was the actual complainant in the suit. The court rendered rather a lengthy decree, reciting many of the facts shown by the evidence. He concluded that the transactions upon which Kelly based his defense, and which had been assailed in the bill, were void, and were subject to the charges of fraud which the complainants had made. But he also concluded that inasmuch as Short, who was the real party complaining and to be benefited by the decree sought, had previously himself been connected with collusive efforts to aid Simpson in concealing his property, and had come into court with "unclean hands," he was not entitled to recover; and upon that ground the court adjudged that all of the costs in the case which had been incurred prior to the sale by the receiver to Morey should be against the defendants, and all of the costs which had been incurred after that time against the complainant, and dismissed the complainant's bill, leaving the parties just where they were before the litigation commenced. This judgment terminated all of the litigation in which Short and Kelly and the appellants Morris and Crow were involved.

On the 30th day of April, 1904, Kelly made a deed to Short, in which he quitclaimed and conveyed all interest he owned in any of the lands involved in the various suits, including the land in controversy. The consideration recited was $600 in cash paid by Short. By this transaction Short obtained conveyances from all those who had purchased at the sales under the various executions issued and levied upon the lands belonging to Simpson.

The case was tried in the court below without a jury, and a judgment rendered awarding one half of the land to Short and the other half to Morris and Crow. From that judgment all parties have appealed; each side complaining of the judgment rendered awarding one-half of the land to the other.

To summarize: The evidences of title upon which the appellee Short relies are the following: Jas. B. Simpson as the common source; Torrans'. judgment recovered January 14, 1892, and the abstract filed in Upshur county February 28, 1892; the execution and sale thereunder, and the sheriff's deed to R. T. Torrans May 6, 1895; deed from Torrans to Thos. Kelly February 12, 1896; deed from Thos. Kelly to Wm. Kelly May 18, 1897; and deed from Wm. Kelly to Short in 1904. Short also relied on the following transfers: Judgment in favor of the National Park Bank of New York against Simpson January 16, 1893; execution and sheriff's sale thereunder July 6, 1897, and sheriff's deed of same date to F. M. Hayes, receiver, of the Ninth National Bank of Dallas; deed from Hayes as receiver to A. P. Morey June 27, 1898; and the agreement that Morey was holding for Short. While these transfers and muniments do not embrace all the evidence offered by Short, they are all that may be considered material to be here considered.

Morris and Crow rely upon the following chain of title in addition to some of those above mentioned: Deed from Kelly to them May 23, 1894; deed from Kelly to Sheppard & Jones February 14, 1898; and the subsequent acquisition of this claim of Sheppard & Jones from their heirs, which appears to be regular. Under the evidence and findings of the court it must be conceded

that at the time the deed from Kelly to Morris and Crow was executed Kelly had no valid title to any portion of the land in controversy. He was then basing his claim of ownership solely upon the validity of the title acquired by virtue of his judgment and sale thereunder against Cayce. On February 12, 1896, nearly two years after Kelly had executed his deed to Morris and Crow, he acquired the Torrans title. Torrans was the first creditor who fixed a lien on the Upshur county lands. This was done by filing an abstract of his judgment in Upshur county on February 25, 1892. The levy and sale thereafter made carried with it a good title to the purchaser, R. T. Torrans. When Kelly afterwards acquired this title from Torrans it passed with his deed to Short in 1904, unless it previously vested by estoppel on account of his deed and implied warranty to Morris and Crow, or his deed to Sheppard & Jones in 1898. Appellants Morris and Crow claim title through both of these sources, while Short claims that both are equally ineffective for that purpose.

The first question that presents itself is: Did the implied warranty contained in the deed from Wm. Kelly to Morris and Crow in 1894 operate to vest in them the title afterwards acquired by Kelly previous to his transfer to Short? The court below held that it did, but also concluded that it vested only a one-half of Kelly's interest in the land. Upon that issue the court found and concluded as follows: "For the purpose of carrying out said agreement (the written agreement between Short, Kelly, and Simpson to make a common defense to the Camp county suit), Wm. Kelly engaged the services of the defendants, M. L. Morris and W. M. Crow, practicing lawyers of Dallas, Tex., under the firm name of Morris & Crow, agreeing to pay them for their services in case the said lands were recovered against the receiver claiming said lands for the creditors of Jas. B. Simpson's one-half of the land, which would fall to the share of Wm. Kelly under the terms of said written agreement in case the title through Kennet Cayce, or otherwise, was successfully established in said litigation; the only contract being a deed of Kelly's to Morris and Crow for 1,000 acres, undivided, of said land, dated May 23, 1894, which the court construed to be a contract for a contingent fee of one-half the land recovered for Kelly. That on the 23d day of May, 1894, Wm. Kelly executed to M. L. Morris and W. M. Crow his said deed, so construed by me to be such contract conveying an undivided interest of 1,000 acres in said lands described in said deed from J. B. Simpson to Kennett Cayce for a consideration, as stated in said deed, of $5,000 paid in legal service. And the court concludes that said deed was really executed as a contract for a contingent fee as aforesaid and upon the condition that

the said Morris and Crow would be successful in the recovery of said lands for the said Wm. Kelly and his associates, and that the said deed to Morris and Crow was to take effect unless the title claimed by said Kelly under Kennett Cayce or T. L. Torrans was established as the result of such litigation, and the Torrans title acquired by Kelly by the aid of Morris and Crow, his attorneys, inures to their benefit under their said prior deed from Kelly. The court concludes as a matter of law that Morris and Crow having acquired their title from Wm. Kelly by a deed in effect a general warranty deed conveying an after-acquired title, and having thereby contracted with Wm. Kelly to receive for their services one-half of any lands recovered by the said Wm. Kelly, and that the said Wm. Kelly having afterwards acquired the title of R. T. Torrans to the land in controversy in this action by his purchase with the defendant Morris' assistance and at his suggestion and advice as his attorney, defendants' rights attached and vested the title in them to one-half said lands, and, said Wm. Kelly having conveyed said lands to the plaintiff herein by quitclaim deed, the one-half interest not passed to defendants passes to plaintiff, thereby enabling the plaintiff to recover to this extent. Therefore Morris and Crow are entitled under their deed from Kelly, construed as a contract for a contingent fee for one-half the land recovered, to one-half of said lands as against this plaintiff."

Morris and Crow assail that part of the judgment which awarded half of the land in controversy to Short, and Short by cross-assignments attacks that portion which awards a half interest to Morris and Crow. It is manifest from the evidence that Morris and Crow must rely for their right to recover any part of the land upon the strength of their deed from Wm. Kelly executed in 1894 and the subsequent acquisition of the title by Kelly when he purchased the Torrans title in 1896 or 1897. It conclusively appears that, when Torrans recovered his judgment against Jas. B. Simpson and filed an abstract of that judgment in the office of the county clerk of Upshur county, he thereby acquired a lien prior to all other claims upon the lands in controversy which were then the property of Simpson. Hence the sale thereafter made under an execution from that judgment passed to the purchaser, R. T. Torrans, a good title, and this was afterwards passed to Wm. Kelly. We find here the only direct and valid chain of transfers which affected the title to the Upshur county lands at that time. The deed from Wm. Kelly to Short, made in 1904, had the effect to invest Short with that title, unless it had previously vested in Morris and Crow by virtue of the implied warranty contained in their deed of 1894.

[1] Short objects to that deed upon the ground that it is void for uncertainty in the description of the property sought to be conveyed. The language of the description is as follows: "One thousand acres of land undivided and a part of a tract of land containing 7,630 and 8/10 acres, situated in the counties of Camp and Upshur, Texas, on the headright surveys of E. B. Davis, Matthew Cartwright, Vincent Hamilton, Dexter Watson, and Wm. Berryhill; said entire tract fully described in a deed of Kennett Cayce by sheriff to Wm. Kelly, of date January the 2nd, 1894, and recorded in Book K, on page 97, Records of Deeds of Camp County, Texas, to which deed and record reference is here made for a full description of said land." Descriptions equally as vague and very similar to the above have been held sufficient in a number of cases decided by the courts of this state. Dohoney v. Womack, 1 Tex. Civ. App. 354, 19 S. W. 883, 20 S. W. 950; Slack v. Dawes, 3 Tex. Civ. App. 520, 22 S. W. 1053; Peterson v. McCauley, 25 S. W. 828; Byrn v. Kleas, 15 Tex. Civ. App. 205, 39 S. W. 983; Fontaine v. Bohn, 40 S. W. 637; Hinzie v. Robinson, 21 Tex. Civ. App. 9, 50 S. W. 635. The legal effect of the terms employed in the deed above referred to was to convey an interest equal to 1,000 acres in whatever portion of the lands might belong to Wm. Kelly. Fontaine v. Bohn and Hinzie v. Robinson, supra. The trial court sustained the validity of the deed, but construed it as a contract for a half interest in whatever land might thereafter be allotted to Wm. Kelly. He appears to have considered, in connection with the deed, a contract made before the execution of this deed, between Simpson, Kelly, and Short.

[2] He finds as a fact that no other contract except that evidenced by this deed was made between Kelly and Morris & Crow, and this finding is amply supported by the record. His construction of the deed was a conclusion of law rather than a finding of fact, and for that reason is not binding upon this court in the absence of a specific attack assailing the sufficiency of the evidence to support such finding.

[3] The general rule is that, except when attacked for fraud, accident, or mistake, a deed must be construed according to its terms. Galveston, etc., Ry. Co. v. Pfeuffer, 56 Tex. 66; Caffey v. Caffey, 12 Tex. Civ. App. 616, 35 S. W. 738; I. & G. N. Ry. Co. v. Dawson, 62 Tex. 261; Railway Co. v. Jones, 82 Tex. 160, 17 S. W. 534; 9th Ency. of Ev. 437. The deed here involved is not one which properly falls within any of the exceptions to that rule.

[4] A deed absolute upon its face cannot be construed as a contract for a contingent interest, unless there is some evidence of a contract different from that imported by the terms of the instrument. If we must depend upon the deed in question as the only evidence of the contract between Kelly and Morris and Crow, we have no grounds for holding that it conveys an estate different from that which its terms clearly imply. If that be correct, then the deed of Kelly to Morris and Crow must be construed as an absolute conveyance of the fee to 1,000 acres of land, a part of that which was described and referred to; and it had the legal effect of vesting that interest in the grantees immediately upon its delivery, provided Kelly at that time owned what he thus attempted to convey.

[5] Under the findings of the trial judge, which are supported by the undisputed evidence, it must be admitted that when this deed to Morris and Crow was executed in May, 1894, Kelly in fact had no title to the lands involved in this suit, nor to any other land described in the deed to which reference is there made. His rights at that time depended solely upon the validity of Simpson's attempted transfer to Cayce, a fictitious grantee, and the subsequent acquisition by Kelly of whatever interest this fictitious individual may have held in the property. Kelly never in fact acquired any property in the lands involved in this suit, until he purchased from Torrans in 1896, nearly two years after this conveyance to Morris and Crow. At the time he acquired the Torrans title, he and Short were still litigating over their conflicting claims. The right of Morris and Crow, therefore, must now depend upon whether the after-acquired title which Kelly obtained in 1896, when he purchased from Torrans, vested in them by virtue of the implied warranty contained in their prior deed. It will be observed that the instrument contained no express warranty, nor did it contain any language indicating a purpose to limit the warranty which the statute says shall be implied from the use of certain terms. Article 633 of the Revised Civil Statutes of 1895 is as follows: "From the use of the word 'grant' or 'convey,' in any conveyance by which an estate of inheritance or fee simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs and assigns, are implied, unless restrained by express terms contained in such conveyance: (1) That previous to the time of the execution of such conveyance the grantor has not conveyed the same estate, or any right, title or interest therein, to any person other than the grantee. (2) That such estate is at the time of the execution of such conveyance free from incumbrances. Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance."

[6] A paramount outstanding title is an "incumbrance" within the meaning of a covenant against incumbrances. Roos v. Thig-

pen, 140 S. W. 1180; Lindsay v. Freeman, 83 Tex. 259, 18 S. W. 727; Garrett v. McClain, 18 Tex. Civ. App. 245, 44 S. W. 47; Warden v. Sabins et al., 36 Kan. 165, 12 Pac. 520; 3 Wash. on Real Prop. (3d Ed.) 393. Where the grantor has at the time of his conveyance no title in the property, the effect of his warranty when the title is thereafter acquired is to immediately transfer the same to his grantee. Baldwin v. Root, 90 Tex. 550, 40 S. W. 3.

[7] Nor is it material, in order that a warranty may have this effect, that a valuable consideration should have been paid by the grantee. Robinson v. Douthit, 64 Tex. 101. If we give this effect to Kelly's deed, then it follows that when he acquired the title from Torrans in 1897 it passed immediately to Morris and Crow, Kelly's grantees in the prior deed. That being true, there was nothing left for him to thereafter convey to Short. The deed from Kelly to Morris and Crow was recorded in Upshur county prior to Kelly's deed to Short in 1904.

[8] The appellee Short contends that Morris and Crow are now estopped from asserting title to this property, because of the answer filed by them in the suit of Hayes, Receiver, v. Kelly et al., in the Circuit Court of the United States for the Northern District of Texas. No particular portion of the answer is indicated in the argument, but we assume that the following is referred to: "Defendants say that on or about May 23, 1894, Wm. Kelly conveyed to M. L. Morris and W. M. Crow 1,000 acres, undivided, of said land, as compensation for their services in representing him as attorneys in the pending litigation in reference to same, and to take effect as a valid deed in the event the said Wm. Kelly was successful in recovering said land." It was after the filing of this answer that Short purchased from Kelly. Conceding that the statement made in the answer referred to was sufficient to constitute the basis of an equitable estoppel had Short relied thereon, still, in order for it to be made available in this instance, other facts must appear. It must be shown that Short relied upon the facts stated in the pleading referred to and was thereby induced to change his position with reference to the property in controversy so that it would not injure him if compelled to yield to a different claim set up by Morris and Crow. Scoby v. Sweatt, 28 Tex. 713; Mayer v. Ramsey, 46 Tex. 371; Bynum v. Preston, 69 Tex. 292, 6 S. W. 430, 5 Am. St. Rep. 49; Page v. Arnim, 29 Tex. 69; Lewis v. Brown, 39 Tex. Civ. App. 139, 87 S. W. 704. The record contains no evidence that Short relied upon the statements contained in this answer, or was induced thereby to make the purchase; neither is there any evidence that Short paid anything of value to Kelly for the quitclaim deed which he thereafter procured. Our construction of the deed from Kelly to Morris & Crow is that it conveyed 1,000 acres in whatever lands Kelly owned in the tracts described, to be selected by the grantees. There is nothing in the deed which indicated that it was intended to apply to any less quantity. We have concluded therefore that the court erred in holding that Morris and Crow were only entitled to recover a one-half interest in the property in controversy, and in awarding that half to the appellee Short. According to his construction and findings of fact, the deed from Kelly to Morris and Crow was valid. If he was correct in that conclusion, and we think he was, it follows that the instrument should be given its full force and effect.

The judgment will therefore be reformed and rendered, awarding all of the land in controversy to the appellants Morris and Crow, and taxing all costs, both of this court and the court below, against the appellee Short.

### On Motion for Rehearing.

[9] The appellee insists in this motion for a rehearing that Morris and Crow show no legal right to the land in controversy, because the evidence shows that their deed was to take effect only in the event that Kelly succeeded in establishing the validity of his title through the proceedings against Cayce. We may concede that this is correct as a legal proposition, but the record does not support that construction of the evidence. Morris testified that no such understanding as that relied on existed. Even if there was evidence to the contrary, it merely presented a case of conflict in which the court below manifestly accepted the testimony of Morris as true, for the judgment in favor of Morris and Crow for any part of the land necessarily involved a finding that their deed was not subject to those conditions. If the deed upon which Morris and Crow relied was incumbered with the conditions and agreements asserted by the appellee, they were not entitled to any portion of the land. A finding in their favor by the trial court for an undivided one-half interest is necessarily a finding against the appellee as to the existence of all or any of the facts upon which he now bases his argument. We not only think the facts disclosed by the record warranted that conclusion, but that it is sustained by the great preponderance of the evidence adduced upon the trial.

The motion for rehearing is therefore overruled.