## WILSON v. ROBERTSON et al.  (No. 7796.)

(Court of Civil Appeals of Texas. Galveston. Dec. 22, 1919. On Motion for Rehearing, June 17, 1920.)

**1. Vendor and purchaser ⊕105(1)—No rights after forfeiture of executory contract for nonpayment.**

Purchaser has no rights under an executory contract of purchase which expressly provides that failure to pay any of the purchase-money notes at maturity shall give the vendor right to cancel it, one of the notes never being paid, and the vendor having, pursuant to its right, declared the contract forfeited, and sold the land to another.

**2. Estoppel ⊕87—Declarations to estop must be acted on.**

Title by estoppel cannot be based on representations not acted on.

On Motion for Rehearing.

**3. Vendor and purchaser ⊕228(4)—Purchaser's title unaffected by notice of invalid claim.**

A purchaser's title is unaffected by notice of a claim under a contract; claimant, by reason of forfeiture of contract, having no title or right enforceable against the vendor.

Error from District Court, Chambers County; J. Llewellyn, Judge.

Action by N. G. Robertson and others against M. E. Wilson. Judgment for plaintiffs, and defendant brings error. Reversed and rendered.

A. W. Marshall, of Anahuac, for plaintiff in error.

Thos. J. Baten, of Beaumont, for defendants in error.

PLEASANTS, C. J. This is an action of trespass to try title brought by Thomas J. Baten, N. G. Robertson, and Virginia Robertson against M. E. Wilson. The land in controversy is a part of the James Hoggatt survey in Chambers county, and described as lot 1 in block 16 of the Winnie Suburbs. The Winnie Loan & Improvement Company is the common source of title.

Plaintiffs in their petition claim superior title under the common source and also claim title by estoppel.

The defendant answered by general denial and plea of innocent purchaser and limitation of three, five and ten years.

The trial in the court below without a jury resulted in a judgment in favor of plaintiffs.

Plaintiffs introduced in support of their claim of superior title the following facts:

An executory contract of sale between Charles A. Guy and the Winnie Loan & Improvement Company. This contract provided for payment of $50 cash and four notes of $50, payable annually, and further provided that, if certain improvements were made on

the land, 20 per cent., or amount of one note, should be deducted from purchase price. The contract also provided that, if said payments were not paid promptly, the said Winnie Loan & Improvement Company had the right to cancel said contract of sale, and that time and prompt payment was the essence of the contract, and that same had to be promptly complied with. This contract was entered into July 8, 1896. The right of Charles A. Guy under said contract was, on the 5th of June, 1899, transferred to N. G. Robertson, and an interest therein conveyed to Thomas J. Baten by Robertson.

Plaintiff proved that the first note, due July 8, 1897, was paid and receipted for May 31, 1899. Plaintiff also showed that the second of said notes, due July 8, 1898, was paid May 31, 1899, and contained the notation, "This note is hereby canceled on account of work done breaking land according to contract with Charles A. Guy," as provided for in said contract.

Plaintiffs introduced in evidence a deposit slip of Weeks, McCarthy & Co., bankers, showing $50 on account of note due Winnie Loan & Improvement Company from Charles A. Guy, dated August 2, 1899.

There is no evidence in the record that the Winnie Loan & Improvement Company ever received this last $50 left with Weeks, McCarthy & Co., or that such improvement company ever authorized Guy or Robertson to leave same with said bank; Carls testifying that he went to the office of said improvement company and found no one there and left same with the bank.

The fourth of said notes was never paid at all.

Robertson testified that he made a trip to Galveston to pay said note, but that he could not find any one at the office of said improvement company, and that he then returned to Winnie, and later sent the money down by Wm. Carls to pay same; that Carls informed him when he returned that he could not find any of the company.

Robertson further testified that he never put the check in a letter and mailed it to the Winnie Loan & Improvement Company; that he never went to see Mr. Adoue or Mr. Lobit (directors of said company), or Mr. Hudson (secretary of said company), but went to see the agent and could not find him; that he moved off the land in 1902 after the storm; that he did not pay taxes on the land during the time he was gone, but had instructed Mr. Ludwig to look after the place and pay taxes, but whether or not he did he does not know.

Robertson then testified that he waited ten years, until about 1911 or 1912, before he did anything further, and then wrote to Mr. Adoue and Mr. Lobit and asked where Wilson was; that he also then corresponded with Mr. Hudson, but got no satisfaction from him; that he does not remember Mr. Hudson writing him that the contract had been canceled for failure to pay the purchase note; that in 1911 or 1912 he wrote Mr. Wilson about the land, and employed lawyers to look after it for him. "I still thought I had my interest in that land down there. That's all right if I did know that that contract that we had here provided if I failed to pay one payment they could cancel it."

On May 31, 1899, the Winnie Loan & Improvement Company wrote Mr. Charles A. Guy that whenever the two notes of July, 1899, and July 8, 1900, were paid, the company was prepared to give a warranty deed to the property. The last of said notes was due July 8, 1900.

On January 23d, after the last note was due, the Winnie Loan & Improvement Company wrote one of the plaintiffs, N. G. Robertson, as follows:

"Galveston, Texas, Jan. 23, 1901.

"Mr. N. G. Robertson, Winnie, Texas—My Dear Sir: In reply to your favor regarding your desire to settle Mr. Guy's note which the company holds, I desire to state that we, of course, will accept the principal and interest on this note and give you the note, but unless you can show us a legal transfer from Mr. Guy to yourself, it will be impossible for us to deed you the property. It might be well for you to send the transfer if you have one and the money due on it to the First National Bank, or any other bank in Galveston, to be paid to us on delivery to them of the deed to the property.

"I note that you are correct regarding the one note which should have been canceled, and wish to say that Mr. Guy is now due this company, principal and interest, $68.00.

"Yours very truly,
          "W. A. Hudson, Secretary."

On April 4, 1906, the stockholders of the Winnie Land & Improvement Company deeded to M. E. Wilson all the land in the James Hoggatt league in Chambers county, Tex., except part of those tracts that the deed records of Chambers county show to have been previously conveyed by said Winnie Loan & Improvement Company to other parties.

The following agreement was had between the parties on trial:

"It is agreed that the deed records of Chambers county do not show that the Winnie Loan & Improvement Company had made any conveyance of lot 1, block 16 (being the land in controversy), of the Winnie Suburbs, prior to the 1st day of September, 1907."

[1] We agree with counsel for plaintiff in error that this evidence fails to show title in defendants in error. The contract for the purchase of the land executed by the Winnie Loan & Improvement Company and Guy expressly provides that failure to pay any of the purchase-money notes at maturity would give the grantor the right to cancel the contract of sale.

The undisputed evidence shows that one of the notes has never been paid, and that in

pursuance of its right under the contract the Winnie Company declared the contract forfeited and sold the land to plaintiff in error, and further shows that plaintiff in error purchased and paid for the land without any notice actual or constructive of the Guy contract or of any claim to the land adverse to the title of his grantor. Under these facts he acquired title to the land. Gober v. Hart, 36 Tex. 140; Erwin v. Daniels, 34 Tex. Civ. App. 378, 79 S. W. 61; McPherson v. Johnson, 69 Tex. 487, 6 S. W. 798.

[2] The claim of defendants in error to title by estoppel is based upon acts and representations made by Wilson after they had acquired the title under which' they claim, and it necessarily follows that they were not induced by these statements, acts, or representations to buy the land. This essential element of estoppel being wanting, the plea cannot be sustained. Waggoner v. Dodson, 96 Tex. 415, 73 S. E. 517; Lewis v. Brown, 39 Tex. Civ. App. 139, 87 S. W. 704; Bank v. Bielharz, 94 Tex. 496, 62 S. W. 743.

It follows from these conclusions that the judgment of the court below should be reversed, and judgment here rendered for appellant, and it has been so ordered.

Reversed and rendered.

### On Motion for Rehearing.

[3] Upon further consideration of the record, we have reached the conclusion that the statement in our former opinion "that plaintiff in error purchased and paid for the land without any notice actual or constructive of the Guy contract, or of any claim to the land adverse to the title of his grantor," is not sustained by the evidence. Wilson's testimony and statements made by him in letters to Robertson show that he knew of facts sufficient to put a person of ordinary prudence upon inquiry, which, if pursued, would have given him knowledge of the existence of the Guy contract and of Robertson's purchase from Guy. But this finding becomes immaterial, because the undisputed evidence shows that Guy's contract had become forfeited by its express terms prior to Wilson's purchase of the land, and at the time he made such purchase Robertson had no right under said contract which he could enforce against the Winnie Loan & Improvement Company.

Since any inquiry which Wilson might have made would have failed to show that Robertson had any title or any enforceable right to obtain a title to the land, his title is not dependent upon the question of notice.

Upon the other questions raised in the case we adhere to the conclusions stated in our former opinion.

It follows that the motion for rehearing should be overruled, and it is so ordered.

Overruled.