## M. L. BAKER V. ELIZABETH RAMEY AND OTHERS.

A vendor of land, who retains a lien thereon for the purchase money, has the superior right to the land as against his vendees, until the payment of the purchase money; and his deed to the vendees, reserving such lien, does not vest absolute title in them until the purchase money is paid, previous to which they hold the property in subordination to the vendor's superior right.

In such a case, it is immaterial that the notes given for the purchase money have become barred by the statute of limitation; without payment of the purchase money, the vendees cannot obtain absolute title to the property as against the vendor.

The case of Dunlap's Adm'r v. Wright, 11 Texas Rep., 597, cited and approved.

APPEAL from Rusk. Tried below before the Hon. C. A. Frazer.

This was an action of trespass to try title, brought by Baker, the appellant, against Elizabeth Ramey, one of the appellees, for two lots in the town of Henderson, and the Mansion House hotel situated thereon.

The property in controversy, with other lots, was sold by Baker on the 28th of December, 1853, to Joel B. Crain and George H. Ramey, as partners in the business of hotel-keeping, who executed their note to Baker for $2300 as the purchase money, payable on 1st of March, 1854, with the privilege of payment in cash notes

Baker v. Ramey.

at any time before maturity. On the same date, Baker executed his deed for the property sold, to Crain and Ramey, reciting therein that it was made "for and in consideration of the note, conditions and stipulations hereinafter specifically set forth." The deed then described the property conveyed and the note for the purchase money, and proceeded, "which said principal note, and the notes received thereon as purchase money, are hereby created as a lien upon the same, until the same and all costs arising from suit on the same are discharged;" and subsequently provided that the deed should be "subject to this defeasance or condition only above stated, that the said notes received thereon, with all cost and interest, are discharged as the purchase money."

On the 18th of April, 1854, Baker instituted suit on the note against Crain & Ramey, admitting credits to the amount of $1044. This suit was continued from term to term until the spring of 1857, when Baker amended his petition, and alleged that the note was given for the purchase money of the property already described; and that Crain & Ramey, the defendants, were partners, and purchased the property as partnership property, and further suggested the death of Ramey, and discontinued the suit as to him. At the Spring Term, 1857, there was judgment rendered in this suit in favor of Baker against Crain, as surviving partner, and a decree for a sale of the property to satisfy the judgment. The property was accordingly sold by the sheriff, under execution, on the first Tuesday in July, 1857, when Baker became the purchaser upon his bid of the amount of the judgment and costs.

The deed of the sheriff to Baker, made in pursuance of this sale, was the title asserted by the latter in his present action of trespass to try title against Elizabeth Ramey, the widow of George H. Ramey, in which he sued out a writ of sequestration, under which the sheriff dispossessed the defendant, Mrs. Ramey.

The defendant excepted and answered, alleging the facts above stated, and that on the 28th of December, 1854, pending the suit of Baker against Crain and George H. Ramey, Crain, in consideration of the payment to him of $2000, sold to said Ramey, by warranty deed, all his interest in the property sued for; that since the sale of the property by Baker to Crain & Ramey, in Decem-

ber, 1853, it had been occupied by Ramey, deceased, with the defendant, his widow, and their four children, as their homestead, up to the ejection of defendant and her children, by the sheriff, under the writ of sequestration issued in this case; that Crain & Ramey and this defendant had put improvements on the property to the value of about $3000; and that since the eviction of the defendant by the writ of sequestration, the rents and profits of the premises had been worth $1000 per annum; that Baker, the plaintiff, had never had a valid title to the property, but that the title to an undivided half thereof was in the heirs of Noveline Ochiltree, deceased. And in consideration of the premises, defendant demanded judgment against plaintiff for the possession of the property, for rents and profits since she was dispossessed, and for her damages incurred thereby.

There were numerous exceptions and amendments upon both sides.

Eventually, the plaintiff, protesting that his purchase of the property under the decree against Crain, as surviving partner, invested him with title to all the interest both of Crain and Ramey, amended his pleadings and claimed, in case he was held not to have acquired title to Ramey's interest, that his lien as vendor be enforced against the same; that his bid at the sale, under the decree, was made in the belief that he was purchasing the whole interest of Ramey as well as Crain; that at the time of the decree in the suit upon the note, (referred to in the opinion as No. 1137,) Ramey was dead, and there was no administration on his estate; that subsequently thereto, his widow, the defendant, and James McBride had obtained letters of administration; that plaintiff had presented to them, within due time, the note for the purchase money, with his affidavit thereto, that it was a just demand against Ramey's estate unless he, the plaintiff, had acquired Ramey's interest by his purchase under the decree against Crain as surviving partner; and that the administrators rejected it as a claim against the estate. The administrators and heirs of Ramey, deceased, were made defendants.

In answer to these amendments the defendants adopted all their former exceptions and answers, and further alleged the presentation

to Ramey's administrators of the note, as stated by the plaintiff, and their rejection of it; and that it was barred by limitation, because the plaintiff had not brought suit upon it within three months after its rejection; and, also, because more than four years had elapsed from the maturity of said note up to the filing of plaintiff's amended petition, setting it up as a cause of action in this suit. The plaintiff excepted to this answer, and his exceptions were overruled.

At the trial, the defendants abandoned their plea of outstanding title in the heirs of Noveline Ochiltree.

The court instructed the jury, in substance, that the plaintiff, by his purchase under the decree, acquired one undivided half interest in the property; and directed the jury to find specially whether the writ of sequestration was wrongfully sued out by the plaintiff to oppress Mrs. Ramey, in which case, they could allow her exemplary damages; that in case they found for the plaintiff one-half the property, they should find for the defendants half the rent of it for the time they had been dispossessed under the sequestration; that they would, also, find the amount of purchase money due on the judgment against Crain, as surviving partner at the date of the sale by the sheriff; and, also, the amount of damages done to the property since the eviction of Mrs. Ramey under the sequestration.

The verdict returned was as follows: "We, the jury, find for the defendants two hundred and fifty-seven dollars and sixty-four cents; when the above amount is liquidated by the plaintiff, then the property to belong to the plaintiff and the defendants as partners, each holding equal parts in said property.

"We find the amount of the judgment at the date of sale by the sheriff, ......................................... $1801 02
"Cost and interest to date, ....................... 420 00

$2221 02

"The amount of damage, rents, &c., in favor of Mrs. Ramey, ........................................ $1358 14
"Do., do., in favor of M. Baker, ................. $1358 14

"We find that Crain and Ramey were partners in the purchase of said lots, &c.; and we find that Mrs. Ramey was the wife of the

said George H. Ramey, and that the said children are the children of the said George H. Ramey, deceased." ,

Upon this verdict a decree was rendered, and at a subsequent day of the term was set aside, and an amended decree entered, adjudging to the plaintiff title to one undivided half of the property, and to the defendants the other half, and directing a partition by commissioners; and that the defendants recover of the plaintiff $257 64, according to the verdict.

The plaintiff moved for a new trial, which was refused. Errors are assigned by both parties.

*Armstrong & Parsons*, for appellant.—The first question we will examine is, did the judgment and decree against Crain, as surviving partner, and the sale under that decree, pass the entire title to these lots to Baker? or did it only give him a right to one-half of them?

Real estate purchased by partners, with partnership funds and for partnership purposes, goes into the hands of the survivor, for the purpose of paying the partnership debts. (Collyer on Part., sec. 135, and note 3; Id., sec. 151, 154, 157.)

This land could not be partitioned or held in severalty until the partnership debts were paid. Partners hold as joint tenants, and the effects go into the hands of the survivor, until the debts of the concern are paid. (3 Kent's Com., 39; Id., 62 *et seq.*; 5 Ala. R., 446; 6 Cowen R., 441; 2 Denio R., 577.)

By an examination of the cases above cited, it will not only be seen that Baker had a right, after the death of Ramey, to suggest his death upon the record, and to abate the original suit as to him and his heirs and representatives, and pursue the property in the hands of Crain as survivor; but that the settled American doctrine is, that this was his only course to pursue, and that he could not make the heirs or representatives of Ramey parties to that or any other suit, until he had exhausted the partnership property. They were made parties in the present case, in order to shape the case to suit the views of the judge trying the case below, and not because the plaintiff believed them to be necessary parties, or that they

had any interest whatever in the matters in litigation. (Collyer on Part., secs. 723, 724; Gow on Part., 172; 1 Wend. R., 148.)

If Ramey acquired any rights under his deed from Crain, he acquired those rights with full knowledge of the prior right of Baker, and, therefore, neither he nor his heirs could take any title, as against Baker, by this deed. A subsequent vendee is not a necessary party to a decree decreeing the sale of the property for the payment of the original purchase money. (14 Tex. R., 318.) Even a dissolution of the partnership by agreement between Crain and Ramey would not have, in the least, changed or affected either Baker's rights or his remedies.

*M Casey*, for appellees.

*W. Stedman*, also, for appellees.—There can be no doubt that land purchased by partners for partnership purposes is, so far as the partners and their creditors are concerned, treated as personal property, and is applicable to the payment of the partnership debts in the same manner as personal property. But the rule is well settled, that the right of one partner to dispose of partnership property is confined strictly to personal property, and does not extend to real estate held by the partnership. (Collyer on Partnership, sec. 394; Story on Partnership, sec. 92, note 2, and secs. 94 and 101; Tapley v. Butterfield, Metcalf, 518 and 519; Piatt v. Oliver, 3 McLean, 27; Lawrence v. Taylor, 5 Hill, N. Y., 107; Anderson v. Tompkins, 1 Brock., 456 and 463.) If, therefore, the partners can not, *inter vivos*, dispose of the interest of their copartners in real estate, how can it be said that a survivor can transfer the interest of his deceased copartner? and upon what principle can it be held, that a court of equity can divest the title of a deceased partner, or his heirs, by a proceeding against the survivor? The proposition, it is submitted, is absurd, and not worthy of serious consideration.

The deed from Baker to Crain & Ramey can not be construed to be more or less than a conveyance of the property, with a reservation of a lien for the payment of the purchase money: in other words, the deed did that which the law itself would have done, had no stipulation concerning the lien been inserted in it.

If the contract had been executory, and the defendant had repu-
diated it, the plaintiff might have recovered the land, had he elec-
ted to do so; but he did not consider it of an executory character;
or if he did, he did not elect to abandon it, but affirmed it by
instituting suit against Crain & Ramey for the recovery of the
money and the enforcement of his lien.    Having so affirmed the
contract, he could not now be allowed, even if it were executory, to
abandon it, recover the land and cause a forfeiture of the money
paid and improvements made by the vendees. (Roeder v. Robson,
20 Tex., 754.)    Baker sued Crain & Ramey for the balance of
the purchase money, obtained judgment against Crain, and sold his
interest in the land, and paid the amount of his judgment for it.
He then brought an action of trespass against the widow of Ramey.
He afterwards presented this judgment or the note upon which it
was founded, to the administrators of Ramey, as a claim against
the estate; but does not undertake to swear that it was a just
claim against the estate, as the law required him to do.    He then
amended by setting up this claim against Mrs. Ramey, individ-
ually, and not as representative of Ramey's estate.    The next
step he takes is, to amend by making the administrators and heirs
of Ramey parties, and asking the court to adjust and determine
the rights and equities of the parties; and finally, after a lapse of
more than four years from the maturity of the note mentioned in
the pleadings, and more than three months after the rejection of
the claim by the administrators, he sets up the claim against the
administrators, and asks judgment upon it.    Such shuffling or
twisting has, perhaps, never before characterized a case in a court
of justice; and it is submitted, that a party who presents a record
so pregnant with unfounded pretenses, is entitled to but little con-
sideration at the hands of the court.    And if the pleadings of the
plaintiff place him in so unfavorable a light, how must he be
viewed in a court of equity and conscience, when the facts of the
case are considered.    The facts are, that Baker sold Crain & Ra-
mey the property in controversy for $2300.    They had paid him
in money and money's worth, $1044.    They made improvements
upon the premises to the value of about $3000.    At the institu-
tion of the suit, the plaintiff expelled Mrs. Ramey from the pos-

session, and has since received the rents and profits worth $932 per annum; and all this the plaintiff now claims, and has the hardihood to whimper out complaints of "flagrant bad faith" on the part of the appellee, and to prate about "technical legal quibbles."

BELL, J.—We are of opinion that there is error in the judgment of the court below, for which it must be reversed. The original deed from Baker to Crain & Ramey retained a lien upon the lots, for the payment of the purchase money. Upon the authority of the case of Dunlap's Adm'r v. Wright, 11 Tex., 597, the superior right to the land remained in the vendor, Baker, until the payment of the purchase money. The deed did not invest the vendees, Crain & Ramey, with absolute title. They held the lots in subordination to the superior right of Baker, until the purchase money was paid. The original suit by Baker against Crain & Ramey (No. 1137) was for the recovery of the money due upon the notes, without any reference to the lien upon the lots. The sale, therefore, by Crain to Ramey, before the lien was set up by the amendment to the petition filed May 4th, 1857, vested in Ramey all the interest which Crain had in the lots; which interest, however, still remained subject to the superior rights of Baker. The subsequent proceedings in the suit No. 1137, after it was dismissed as to Ramey, did not affect his interest, or the interest of his estate, in the lots. But neither Ramey, nor his estate, could acquire an absolute title to the lots, as against Baker, without paying the purchase money; and Baker's rights are not affected by the fact that the note for the purchase money has become barred by limitation.

Although Baker mistook his remedy, it was error for the court to make a decree vesting one-half of the property in the estate of Ramey. It appears that Baker had received a part of the purchase money. This may raise an equity in behalf of Ramey's estate, which, perhaps, ought to be discharged before Baker can assert his superior title to the land. We suggest this matter for the consideration of the court below, in view of all the facts that may be shown upon another trial. Judgment reversed and cause remanded.

Reversed and remanded.

MOORE, J., did not sit in this case.