EDDLEMAN et al. v. WOFFORD.

(No. 8178.)

(Court of Civil Appeals of Texas. Dallas. Nov. 29, 1919. Rehearing Denied Jan. 3, 1920.)

1. VENUE ☞32(2)—PLEA OF PRIVILEGE NOT PRESENTED IN TIME WAIVED.

Pleas of privilege may be waived by failure to present them to the trial court within the time and manner required by law.

2. APPEAL AND ERROR ☞912—PRESUMPTION OF WAIVER OF PLEA OF PRIVILEGE WHERE NO ACTION SHOWN BY RECORD.

Where plea of privilege was filed but neither the judgment of the court nor any other portion of the record disclosed any action by the trial court thereon, it will be assumed the plea was waived.

3. ABATEMENT AND REVIVAL ☞81—SPECIAL EXCEPTION PRESENTING PRIVILEGE OF BEING SUED IN COUNTY OF RESIDENCE NOT TIMELY IN AMENDED ANSWER.

If special exception presenting defendants' privilege of being sued in the county' of their residence was filed for the first time in the amended answer, it came necessarily after other and prior pleading, and consequently was not filed in due order.

4. EVIDENCE ☞418—PAROL EVIDENCE ADMISSIBLE TO SHOW UNDISCLOSED PRINCIPAL OF INDEMNITY CONTRACT.

Exception, based on the parol evidence rule, was properly overruled to allegation in petition that the indemnity contract sued on, although executed in the name of a named building company as principal, was in fact the contract of a certain bank for which the building company was acting, where the petition did not disclose that plaintiff knew that the building company when it signed was acting for the bank as the real party in interest; the rule being that real · party, if another than the one signing a nonnegotiable instrument or contract ˙ not under seal, may be shown by parol evidence, where the beneficiary at the time of accepting the contract does not know that the party signing ˙ is ɳot the real party in interest. ,

5. EVIDENCE ☞418—PAROL EVIDENCE INADMISSIBLE TO SHOW REAL PARTY IN INTEREST IN CONTRACT WHERE RELATIONSHIP WAS KNOWN AT TIME OF CONTRACTING.

Where the beneficiary, at the time he accepts a contract, knows that the party signing is not the real party in interest, parol evidence is not admissible to show the relation of the real party in interest to the contract, for there is then no undisclosed principal and the beneficiary can proceed alone against the party signing, because, knowing the facts, he is held to have elected to rely upon the obligation of the agent or substitute.

6. APPEAL AND ERROR ☞1039(2)—ALLEGATIONS AS TO MONEY IN HANDS OF ONE DEFENDANT OWNED BY OTHER DEFENDANTS NOT PREJUDICIAL TO LATTER.

In action on indemnity contract, in which the liquidating agent of the insolvent bank which was the real party principal in the indemnity contract was made a party together with the sureties on the contract, allegation in the petition that such agent had in his possession money belonging to the other defendants, as stockholders of the bank, which he intended to pay to·said defendants, was not subject to exception by such other defendants as immaterial and calculated to prejudice their rights; such · allegation being in no manner related to the merits of their defense.

7. CORPORATIONS ☞370(1)—POWERS LIMITED TO THOSE GRANTED OR IMPLIED.

The powers of a private corporation are such only as its charter confers, and any·act beyond those powers expressly conferreɖ or fairly implied is ultra vires and ordinarily void.

8. CORPORATIONS ☞447 — HAVE POWER TO AGREE TO REPAY MONEY.

It is not beyond the power of the ordinary private corporation to agree to repay money delivered to it by another and claimed by third parties in case it is determined that such third parties are in law entitled thereto.

9. BANKS AND BANKING ☞261(3)—ESTOPPEL TO URGE ULTRA VIRES AS DEFENSE TO INDEMNITY CONTRACT.

Even if national bank's contract of indemnity against materialmen's liens given to secure

payment to it of money due its debtor on building contract was ultra vires, yet the bank having received the money would be estopped to deny its liability on that ground.

**10. CORPORATIONS ⬡═385—DEFENSE OF ULTRA VIRES NOT ACCEPTED WHERE WORKING LEGAL WRONG.**

Where to avoid an ultra vires act would work a legal wrong, injustice, or loss to another, equity does not look with favor upon and will not accept such defense.

**11. CONTRACTS ⬡═175(2)—INDEMNITY ⬡═15 (7)—EVIDENCE ADMISSIBLE AS TO DISPOSITION BY PARTIES OF MONEY PAYMENT OF WHICH WAS SECURED BY INDEMNITY CONTRACT.**

In action against the officers of a bank as sureties on an indemnity contract on which the bank was the undisclosed principal, testimony of plaintiff, who was an officer in another bank, that the money held by him, and to secure the payment of which to the first bank the indemnity contract was given, was placed to the credit of the first bank, was admissible, as it is always permissible to show what the parties did under their contract, as disclosing their construction of its purpose.

**12. INDEMNITY ⬡═15(7)—EVIDENCE OF ULTRA VIRES CONTRACT ADMISSIBLE TO SHOW REAL PARTY PRINCIPAL.**

In action on an indemnity contract against liquidating agent of insolvent national bank on the ground that the bank was the real party principal on the contract, and against certain officers of the bank as sureties, proof that the bank agreed to keep on deposit with another bank a sum equal to the amount which the first bank borrowed under an arrangement to enable it to conceal the fact of its loan of more than a legal amount to a building company was admissible as against the objection that such arrangement was ultra vires, to show that the loan by the second bank was in fact made to the first bank, and hence that the indemnity, which was given to secure the payment to the building company of money due on a building contract, as against materialmen's liens, was really for the benefit of the first bank.

**13. APPEAL AND ERROR ⬡═500(1)—REFUSAL OF MOTION TO DIRECT VERDICT NOT REVIEWABLE WHERE RECORD SHOWS NO RULING.**

No issue was presented by assignment of error by a defendant that he requested and the court refused an instruction peremptorily directing verdict for him where the record, while containing what purported to be such a charge, did not show that it was ever presented to or acted upon by the court below.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by R. P. Wofford against W. H. Eddleman and others. From judgment for plaintiff, defendants appeal. Affirmed.

McCart, Curtis & McCart, of Ft. Worth, for appellants.

Adams & Stennis, of Dallas, for appellee.

RASBURY, J. At a former term of this court we reversed the judgment of the lower court because of the court's refusal to grant appellants' peremptory instruction. On motion for rehearing counsel for appellee assert that, while the record does show what is in form a peremptory instruction, it fails to show that the same was presented to or acted upon by the trial court, and that our attention was called thereto in appellee's brief in the form of an objection to any consideration of the assignment. The record and briefs of appellee support the contention precisely and particularly. We therefore withdraw our former opinion and restate the case and our conclusions therein.

Prior to the execution of the indemnity contract presently referred to, the Western Company, a private corporation, owned a lot in the city of Dallas. Upon the lot the Texas Building Company, also a private corporation, was erecting a building under the terms of a contract with the Western Company. The building being so erected was intended for the use and occupancy of the Commonwealth National Bank of Dallas. The Texas Building Company was a customer or patron of the Western National Bank of Ft. Worth, which desired to loan the former $50,000 to be used in erecting the building, but, due to the fact that the Texas Building Company had borrowed from the Western National Bank of Ft. Worth as much as the bank was authorized to advance, the loan could not be made in the usual way. As an expedient the Western National Bank of Ft. Worth borrowed the money from the Commonwealth National Bank and in turn transferred same to the credit of the Texas Building Company on its books. The method adopted by the Western National Bank in borrowing the money was to take the note of Texas Building Company indorsed by Eddleman, Coy, and Haney, respectively president, vice president, and cashier of the Western National Bank of Ft. Worth, and negotiate same with the Commonwealth National Bank, the proceeds of which were passed to its credit. As security for the payment of the note, the Western National Bank of Ft. Worth deposited of its funds with the Commonwealth National Bank a sum of money equal to the note. Upon such deposit it was allowed interest. As the note of the Texas Building Company so indorsed, and all renewals thereof, were reduced, the deposit required of the Western National Bank of Ft. Worth was accordingly reduced; that bank attending to all renewals and issuing checks for all interest payments. The negotiations which culminated in the plan recited were between the officers of the Western National Bank of Ft. Worth, above named, and appellee Wofford, who was an officer of the Commonwealth National Bank. Also the plan so

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

adopted, the evidence discloses, was a method commonly resorted to by bankers at that time to enable them to evade regulations against excessive loans. At or about the completion of the building and when there was in the hands of appellee Wofford, who also represented the owner of the building, $3,735.57 due under the building contract, certain parties claimed they were entitled to liens thereon for material which had been sold to the Texas Building Company and wrought into the building as result of which Wofford declined to pay over said sum.

Thereupon appellant Coy, vice president of the Western National Bank, negotiated with Wofford concerning the disposition to be made of the balance on the contract, pending the disposition of the claims of those who asserted a lien against the building, which sum the Western National Bank desired to be applied on its indebtedness to the Commonwealth National Bank. The matter was finally solved by Coy securing the execution of an indemnity contract, signed by Texas Building Company as principal and W. H. Eddleman, Rufus C. Coy, and O. P. Haney as sureties, whereby they bound themselves, in consideration of the payment of said sum to the Texas Building Company, to reimburse Wofford for any liability for which the Western Company should be held on account of the claims so asserted, together with all costs, expense, and attorneys' fees incurred in that respect. After the execution of the indemnity contract, Wofford paid the money to the Western National Bank of Ft. Worth, which in turn applied the same to the payment of its debt to the Commonwealth National Bank. Subsequently Wofford was sued and held liable for said claims which, with costs, attorneys' fees, etc., aggregated $4,273.83. Subsequently also the Western National Bank of Ft. Worth went into liquidation. To recover said amount this suit was commenced against W. H. Eddleman, Rufus C. Coy, and O. P. Haney, as sureties on said contract, and against R. J. Rhome, liquidating agent of the Western National Bank, and who it was also alleged had in his hands moneys due said Eddleman, Coy, and Haney as stockholders of said bank, and alleging that the Texas Building Company, the principal in said contract, was without assets, notoriously insolvent, and had ceased to exist as a corporate entity. In addition to declaring formally upon the contract, it was also alleged that, while said contract was in the name of Texas Building Company as principal, it was in fact the contract of the Western National Bank of Ft. Worth, which received the money paid thereunder and for and on behalf of whom the Texas Building Company was acting at the time. There was trial by jury to whom the court referred certain issues of fact in form of the usual interrogatories for special verdict. The answers found the facts we have recited, and the evidence will support the findings. Upon the answers of the jury judgment was awarded appellee for the sum indicated. From that judgment this appeal is prosecuted.

[1-3] The contract of indemnity sued upon did not by its terms provide it should be performed in Dallas county where the suit was commenced. None of the appellants, defendants below resided in Dallas county. By statutory plea of privilege and appropriate special exception they presented their privilege of being sued in Tarrant county, where they resided. The issue so raised in the manner indicated is presented here. The record affirmatively shows that both the plea and the exception were not presented within the time required by the statutes and rules regulating dilatory pleas or those that do not go to the merits of the controversy, and no showing made why they were not disposed of, etc., which would excuse such failure. That such pleas and exceptions and the right they assert may be waived for failure to present them to the trial court within the time and manner required by law is too well settled to require discussion. Harris Millinery Co. v. Melcher, 142 S. W. 100. The plea of privilege was filed March 1, 1917. The judgment of the court nor any other portion of the record discloses any action whatever by the court upon the plea. As a consequence we assume it was waived. The special exception is shown in an amended answer filed April 30, 1918, which purports to be in lieu of all former pleadings in the case, and is the only pleading of appellants shown in the record, save the plea of privilege just referred to. If the exception was filed for the first time in the amended pleading, it came necessarily after other and prior pleading and as a consequence was not filed in due order. If filed prior to the amended pleading, it was waived, since several terms of court passed after appellants appeared in the case, and since, as we have said, no showing is made why it was not disposed of at the first term of the court after it was filed.

[4, 5] Appellant appropriately excepted to that portion of appellee's petition which alleged in substance that, while the indemnity contract was executed in the name of the Texas Building Company as principal, it was in fact the contract of the Western National Bank, which received all the benefits therefrom and for whom the Texas Building Company was acting, on the ground that appellee, by parol evidence, sought to vary, contradict, and add to the provisions of the written contract. The exception was overruled, and the court's action in that respect is assigned as error. We conclude that the court did not err. It is a well-settled and uniform rule that, if the real party in interest is another than the one signing the contract, parol evidence, as relates to nonnegotiable instruments and contracts not under seal, is permissible to show such real party and hold him there-

on, on the ground that such proof does not vary the terms of the agreement but brings in another party who is bound thereon by reason of his relation to the party actually signing same. Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764. Such rule is commonly referred to as the rule of undisclosed principal and has no application, as said in the case just cited, in cases where the beneficiary in the contract knows, at the time he accepts the contract, that the one signing was not the real party in interest. Under such facts, there is not an undisclosed principal, and the beneficiary can proceed alone against the one signing, because knowing the facts he is held to have elected to rely upon the obligation of the agent or substitute. A fair analysis of the pleading, against which the exception was directed, does not disclose that appellee in fact knew that the Texas Building Company was acting for the bank at the time it signed and that the bank was the real party at interest.

[6] As we have shown in our statement of the case, the Western National Bank of Ft. Worth went into voluntary liquidation, and at the time this suit was commenced its affairs were being administered by R. J. Rhome, liquidating agent, who was made a defendant in the suit, and who, it was alleged among other things, had in his possession moneys belonging to the other defendants as stockholders of said defunct bank, which he intended to pay to said defendants. To such allegations appellants excepted on the ground that same was immaterial and calculated to prejudice their rights. The exception was overruled and the court's action assigned as error. The court did not, in our opinion, err. As the representative of the bank the liquidating agent was a proper party clearly. If, in addition, such agent had in his possession or expected to receive funds belonging to the other defendants who were stockholders in the bank, it at least was not prejudicial to so allege and on trial develop that fact and hold the liquidating agent for any sum shown to be due his codefendants. Ordinarily, funds in possession of third persons are not so impounded; but, when such third persons are parties to the suit, it cannot be said that it is prejudicial to the other defendants on the merits of the case to so allege. Such allegation in no manner related to the merits of appellants' defense and was a claim lacking in anything calculated to arouse prejudice.

[7-10] It is also contended in substance that the court erred in admitting in evidence, as against the bank or its liquidating agent, the indemnity contract and the other proof in that connection, on the ground that such contract, if the contract of the bank, was ultra vires. It is, of course, an elementary rule that the powers of a private corporation are such only as its charter confers, and that any act, for reasons too well settled to enumerate, beyond those powers, expressly conferred or fairly implied, is ultra vires and ordinarily void. It is not, however, beyond the power of the ordinary private corporation to agree to repay money delivered to it by another and claimed by third parties in case it should be determined that such third parties are in law entitled thereto. But it may be conceded, for the moment, that the giving of the contract was ultra vires, and yet the bank, having received the money, would be estopped to deny its liability. In such cases, or where to avoid the ultra vires act would work a legal wrong, injustice, or loss to another, equity does not look with favor upon and will not accept such defense.

[11] Over the objections of appellant, the appellee Wofford, who was also an officer of the Commonwealth National Bank, testified that the money held by him was placed to the credit of the Western National Bank. The action of the court in the respect stated is assigned as error. The court did not, in our opinion, err. We understand it is always permissible to show what the parties did under their contract. It discloses their construction of its purpose.

[12] As we have shown in our statement of the case, the Western National Bank agreed to keep on deposit with the Commonwealth National Bank a sum equal to the amount which the former borrowed under the plan already recited. Objection was timely made to the proof of that fact. The objection was overruled and the court's action assigned as error. The contention is that such an arrangement was void so far as relates to the Western National Bank, because ultra vires. It may for the time be conceded that the act was ultra vires, and, waiving also the question of whether any benefits were received by the bank which would estop it from denying its act, the proof was nevertheless admissible, in our opinion, for the purpose of showing that the loan was in fact made to the Western National Bank and the idemnity for its benefit. That fact was a circumstance which tended to prove that issue, and was admissible for that purpose. No attempt was made to hold the bank upon the deposit, which might have given rise to the defense of ultra vires.

[13] The appellant contends that he requested and the court refused an instruction peremptorily directing verdict for the appellant Rhome, liquidating agent of the Western National Bank of Ft. Worth, and assigns error in that respect. Appellee objects to any consideration of the assignment on the ground that the record fails to show either that the charge was presented to or refused by the court. As indicated at another point in this opinion, while the record contains what purports to be such a charge, it does not in any manner appear that it ever w

presented to or acted upon by the court below. As a consequence no issue is presented by the assignment, and it is accordingly overruled.

There are three other assignments which we overrule. We have examined them carefully and conclude that they do not disclose any error, but that the issues are not so important as to require a discussion.

The judgment is affirmed.