**SILVERMAN et al. v. HARMON et al.\***
(No. 6898.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 28, 1923. Rehearing Denied March 28, 1923.)

**1. Trespass to try title ⊜⇒35(2)—Defendant may prove estoppel or any other defense except limitation under plea of not guilty.**

Under a plea of not guilty in an action of trespass to try title, defendant can interpose the defense of estoppel or any other equitable defense and any legal defense except limitation, which must be specially pleaded. Vernon's Sayles' Ann. Civ. St. 1914, art. 7740.

**2. Estoppel ⊜⇒94(1)—Acquiescence by silence may estop party from asserting legal title and right of property.**

Under the principle that, if one is silent when he should speak, equity will close his mouth when he should remain silent, acquiescence by mere silence, as well as intentional misrepresentation, misleading conduct, or wrongful concealment, may estop one from asserting legal title to and rights of property, real or personal, though there is no intention to deceive or mislead, as where the owner, by standing silently by and permitting another to deal with property as though it were his own, permits a third person, acting in ignorance of the real condition of the title, to place himself in a worse position than before; fraud, actual or constructive, being the essential element.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel.]

**3. Estoppel ⊜⇒87—Essentials stated.**

There can be no estoppel by representations, whether by words, acts, or silence, unless another was induced to act thereby, and, acting in good faith and with reasonable diligence, suffered an injury so clearly connected with the wrong that it should have been foreseen by the guilty party.

**4. Equity ⊜⇒64—Estoppel ⊜⇒72—Aids vigilant and active only; he who trusts most loses most.**

Equity aids the vigilant and active, not the neglectful and indolent, and he who trusts most must lose most, if some innocent party must suffer.

**5. Estoppel ⊜⇒92(3)—Vendor and his executors held not estopped to recover land on vendees' default by accepting money paid vendee by subsequent purchasers.**

A vendor, whose deed and contract with vendees were recorded, and his executors, held not estopped from recovering the land on vendees' default by accepting money from a vendee which they knew was paid him by subsequent purchasers from him, in the absence of evidence that such purchasers knew that their money was so paid and received, or were misled by vendor or his executors, who were not obligated to inquire into the source of the payments.

**6. Vendor and purchaser ⊜⇒299(1)—Vendee in default cannot defend possession against vendor.**

Vendee in an executory contract, if in default, even as to part only of the purchase money, cannot defend his possession against vendor's suit to recover possession.

**7. Trespass to try title ⊜⇒38(1)—When plaintiffs show legal title, burden is on defendants to show superior title.**

In trespass to try title, it is incumbent on plaintiffs to show their right to recover the land, but, when they show legal title, the burden is on defendants to show a superior title in themselves.

**8. Evidence ⊜⇒441(8)—Testimony as to parol agreements with vendor inadmissible.**

In trespass to try title to land sold under a contract, which was breached by vendees, testimony as to parol agreements with vendor held inadmissible; the written contract fixing the status of the land and the parties.

Appeal from District Court, Jim Wells County; Hood Boone, Judge.

Suit by Dilla Cohn Silverman and others against P. J. Harmon and others. From a judgment for plaintiffs against defendants Harmon and another, and for the remaining defendants, plaintiffs and defendant Harmon appeal. Affirmed as to defendant Harmon, and reversed and rendered as to remaining defendants.

Broeter & Ellis, of Alice, and J. C. Scott, of Corpus Christi, for appellants.

Boone, Pope & Savage, of Corpus Christi, R. R. Mullen, of Alice, and Perkins & Floyd, of Alice, for appellees.

FLY, C. J. This is a very cumbersome record, the transcript consisting of 432 pages of typewritten matter, and the statement of facts containing 791 pages. Appellants have

copied into their briefs only 151 of the 196 assignments filed in the trial court; about one-third of the brief of 210 pages being appropriated for that purpose. The record also contains 148 bills of exception. We ascertain that the suit was one of trespass to try title instituted by the appellants Dilla Cohn Silverman, her husband, Abe Silverman, Archie Cohn, and Louis Frank, executors and trustees of the will of Philip Cohn, deceased, against the appellees P. J. Harmon, W. A. Henry, Arthur B. Martin, J. B. Osborne, and J. L. Sutherland, the land involved being 323 acres, described as lot 1 of "Adams-Staples farm lots." Appellees answered by a general demurrer, plea of not guilty, and limitations of three and five years. The cause was submitted to a jury on special issues, and on the answers thereto judgment was rendered that Dilla Cohn Silverman, joined by her husband, Abe Silverman, Archie Cohn, and Louis Frank, recover from P. J. Harmon and W. A. Henry, the last named by default, the 323 acres of land sued for except 5 acres sold by Harmon to Arthur B. Martin, 5 acres conveyed by Harmon to C. B. Osborne, and 5 acres sold by Harmon to J. L. Sutherland, as to which 15 acres appellants take nothing as against Martin, Osborne, and Sutherland. Harmon excepted as to the judgment against him, and appellants excepted to that part of the judgment in favor of Martin, Osborne, and Sutherland. Appellants and Harmon perfected their appeals by giving bonds as required by statute.

The court instructed a verdict as against P. J. Harmon in favor of appellants, and in answer to the issues submitted the jury found that Philip Cohn, whose estate appellants are administering, had notice that Harmon and Duncan, P. Harmon and their agent, were contracting with purchasers for the sale of subdivisions of the land in controversy and were collecting the purchase money from such purchasers; that Philip Cohn had notice that the proceeds of the sales of such subdivisions were being applied by Harmon and Duncan and P. J. Harmon, either on indebtedness of said Cohn on said lands, or paying it to him, or in improvements on the lands or in furtherance of the sales of such lands; further that appellants, as executors and trustees of the estate of P. Cohn, knew that Harmon and Duncan and P. J. Harmon and their agents were collecting the purchase money from purchasers of the land, and knew that such collections were appropriated to the payment of the debts of said Cohn due on said land, or in improving the land and furthering sales, and especially that they knew of sales to Martin, Osborne, Sutherland, and Henry. They knew that Harmon was making deeds to the lands when the purchasers paid for them, and made no objection to such sales made before Oc-

tober 1, 1916. The evidence sustained the findings.

The first assignment of error assails the judgment because it is unsupported by the facts, in that it was shown that title to the land was in Philip Cohn, and on his death the same passed to appellants; that none of the purchasers knew that appellants had any knowledge of the fact of Harmon selling their land to the purchasers. Under that assignment there are three propositions: First, that a person acquires no title to land as against the owner from one who does not own it, nor has authority from the owner to convey it; the second merely extends the proposition to the representatives of the dead owner; and the third that in an action of trespass to try title an equitable title must be specially pleaded. It is rather a strain on the assignment of error to obtain anything on which to base these propositions, but we have considered them anyway, as substantially the same propositions are advanced under other assignments of error.

The evidence in this case shows that on December 4, 1909, an agreement in writing was entered into between Philip Cohn and Harmon and Duncan, wherein it was recited that Clark Pease, H. Cohn, and S. Gugenheim had contracted to sell P. Cohn what was known as the "Adams-Staples farm lots," and that, if that contract was executed and the land conveyed to Cohn, he agreed to convey it to said Harmon and Duncan, the same to be paid for in installments, set out in the contract. The land was conveyed to P. Cohn by Pease, H. Cohn, and Gugenheim on January 1, 1910, and on June 12, 1911, another contract was entered into between P. Cohn, on the one part, and P. J. Harmon and J. K. Duncan, on the other. That contract was for the sale of the land known as the "Adams-Staples farm lots," except certain parts sold to J. C. Watkins and Charles Loughmiller; the consideration being the sum of $91,362.18, in deferred payments. Cohn in that contract bound himself to make a deed to Harmon and Duncan on the payment of the last installment of the purchase money. Harmon conveyed the land to Martin, Osborne, and Sutherland and paid the money received for such lands to Cohn. He and appellants herein knew that Harmon was selling off parts of the land, and that they were receiving the purchase money for the same.

[1] Under a plea of not guilty a defendant in an action of trespass to try title can interpose any lawful defense, except the defense of limitation, which shall be specially pleaded. Vernon's Sayles' Civ. Stats. art. 7740. The statute justifies the defense of estoppel or any other equitable defense under the plea of not guilty. Scarbrough v. Alcorn, 74 Tex. 358, 12 S. W. 72; Guest v. Guest, 74 Tex. 664, 12 S. W. 831; Kauffman v. Brown,

83 Tex. 41, 18 S. W. 425; Beason v. Williams (Tex. Civ. App.) 229 S. W. 963; Village Mills Co. v. Houston Oil Co. (Tex. Civ. App.) 186 S. W. 785; Rio Bravo Oil Co. v. Sanford (Tex. Civ. App.) 217 S. W. 221; Mensing v. Lumber Co. (Tex. Civ. App.) 194 S. W. 208; Blumenthal v. Nussbaum (Tex. Civ. App.) 195 S. W. 275.

There is no claim that the purchasers of the land from Harmon were induced by the acts or words of either P. Cohn or his representatives to enter into the contracts of purchase of the land. The purchasers knew that the record title to the land was in P. Cohn, because on February 1, 1910, before Harmon sold any of the land, the deed from Gugenheim, Cohn, and Pease to P. Cohn had been recorded in Nueces county. That deed placed the record title in P. Cohn. They were given notice by the same record that Harmon had no title to the land, the contract between Harmon and Duncan and P. Cohn, dated June 12, 1911, showing that Cohn had entered into a contract upon the compliance with onerous conditions to convey to Harmon and Duncan the lands in controversy. The record did not show any compliance with the terms of the contract upon the part of Harmon and Duncan, and no one by word or act ever led appellees to suppose that the terms had been complied with. They were notified that a deed would be executed by Cohn to Harmon and Duncan upon the payment of certain sums, and they knew that such deed had never been executed. They had notice that Harmon could not obtain a release of any part of the land until he had paid certain indebtedness and obtained a deed of conveyance from Cohn. No one authorized to do so by word or act ever intimated to any one of the purchasers that P. Cohn or his executors would release the land they bought or give a title to the same. They knew Harmon had no title. The only claim made to equitably estop appellants from claiming the land is that of their knowledge of the fact that Harmon was selling off portions of the land, and had entered no objection to the sales, and appropriated the money from such purchases when paid to them by Harmon. In other words, they claim title on account of the acquiescence by appellants in the sale of the lands.

[2] It is the rule in equity that acquiescence consisting of mere silence may operate as an estoppel to preclude a party from asserting legal title and rights of property, real or personal. There need be no intention to deceive or mislead. The rule is based on the principle that, if a person is silent when in conscience he should speak, equity will close his mouth when in conscience he ought to remain silent. This is the case where the owner stands silently by and permits another to deal with property as though it were his own, and thus permits the other to place himself in a worse position than before. Of course, the other person should be acting in ignorance of the real condition of the title. A striking instance of such estoppel is where an owner of land by intentional misrepresentation, misleading conduct, or wrongful concealment may preclude himself from asserting his title. In such cases fraud, actual or constructive, is the essential element. Pomeroy, Eq. Jur. § 821; Mayer v. Ramsey, 46 Tex. 371. The rule is thus stated in Burleson v. Burleson, 28 Tex. 416:

"If one act in such a manner as intentionally to make another believe that he has no rights or has abandoned them, and the other, trusting to that belief, does an act which he otherwise would not have done, the fraudulent party will be estopped from asserting his right," unless it be such a case as will admit of compensation in damages.

See, also, Hume v. Carpenter (Tex. Civ. App.) 188 S. W. 707; Priddy v. Green (Tex. Civ. App.) 220 S. W. 243.

[3-5] In order for appellees, who purchased from Harmon, to have obtained an equitable right to the lands, there must have been some representation by the real owner of the land, whether consisting of words, acts, or silence, and that such representations should have been believed, relied upon, and acted upon by the purchasers. It is the universal rule that there can be no estoppel unless the party claiming under it was induced to act by it, and did act in good faith and with reasonable diligence. In this case Cohn nor appellants, had any communication, verbal or written, with appellees, unless it be through the medium of their recorded contract with Harmon and Duncan, which informed them in no uncertain terms that Harmon had no power or authority to sell and convey any part of the land until he had a deed, and that Cohn would not ratify any deed made by him until a deed of conveyance had been executed by him and delivered to Cohn. The record in no uncertain terms informed appellees that title to the land was in Cohn, and that Harmon had no power to convey it to any one.

But it is contended that appellants accepted money from Harmon which they knew was paid to him by appellees on the land, and therefore they are in equity and good conscience estopped to deny the title of appellees in the land. The reply is that appellants were under no obligation to inquire into the source whence came the payments, and in no manner deceived appellees as to the status of affairs, but openly and aboveboard took any payments made by Harmon and appropriated it, not to any debt owed by appellees to Harmon, but owed by the latter to them. The height and front of appellants' offending was that they did not refuse to accept Harmon's payments and inform appellees, as they had been notified by the county

records, that they bought land from Harmon at their own risk. There is no testimony tending to show that appellees knew that their money was ever paid to and received by P. Cohn or his representatives, and therefore those acts could not have influenced them in any manner. Unless they knew that such money was appropriated by appellants, knowing that they had paid, no estoppel could possibly arise in their favor, even though all the other essentials of an estoppel had been present. National Bank v. Bielharz, 94 Tex. 493, 62 S. W. 743. It is clear that there could have been no estoppel by conduct unless appellees knew of such conduct and acted on it. Nichols-Steuart v. Crosby, 87 Tex. 443, 29 S. W. 380; Wilson v. Robertson (Tex. Civ. App.) 223 S. W. 285; Lewis v. Brown, 39 Tex. Civ. App. 139, 87 S. W. 704; Scoby v. Sweatt, 28 Tex. 713; Masterson v. Little, 75 Tex. 682, 13 S. W. 154. As said in the Scoby v. Sweatt Case and copied and approved in Lewis v. Brown and Masterson v. Little:

"No * * * estoppel can arise without proof of wrong, on one side, and injury suffered or apprehended, on the other, nor unless the injury be so clearly connected with the wrong that it might and ought to have been foreseen by the guilty party."

Appellants had placed their deed and the contract with Harmon and Duncan on record, and under the circumstances they could not have foreseen in their Chicago home that citizens of Texas would accept without question or inquiry deeds from a man who had no title to the property. Not they, but the credulity and childlike trust of appellees, are responsible for their dilemma. Equity aids the vigilant and active, not the neglectful and indolent. "He who trusts most must lose most," if some innocent party must suffer. There was no testimony tending to show that P. Cohn or his executors by any act, word, deed, or omission misled any one of the appellees, but, if they or either of them were misled by any one, it was by Harmon, and even in his case they acted with full notice given by the record. None of the authorities cited by the purchasers aid them in the least.

[6] The cross-appeal of Harmon is without merit. The evidence does not sustain the propositions and points advanced by Harmon. The case is simply one of a vendor suing for land which the vendee has failed and refused to pay for. The vendor had the right to ask for a foreclosure of the vendor's lien or to sue for his land. His representatives chose the latter remedy. It cannot be contended that Harmon had made the payment necessary under the contract of sale to entitle him to a deed, and if that had been shown, it would not have deprived the vendor of his right of foreclosure, or the recovery of the land. That Harmon may have made improvements on the land would not

defeat the right of the vendor to recover the land even if a part of the purchase money remains unpaid. It is the settled doctrine that the vendee in an executory contract for the sale of land, if he be in default even as to a part only of the purchase money, cannot defend himself in the possession of the land against the suit of the vendor. Whiteman v. Castlebury, 8 Tex. 441; Dunlap v. Wright, 11 Tex. 597, 62 Am. Dec. 506; Robertson v. Paul, 16 Tex. 472; Secrest v. Jones, 21 Tex. 121; Baker v. Ramey, 27 Tex. 52; Monroe v. Buchanan, 27 Tex. 241. As said in the leading cited case of Dunlap v. Wright:

"This is not a suit for specific performance. It is not one in which the plaintiff [vendee] shows equity, and, if in default, gives some reasonable excuse, and, on offering to do equity, calls on the court to enforce his rights. It is based on a supposed mere, naked, legal right; and we have seen that, without performance on his part, the vendor, and not the vendee, has the superior title, and, at least, if in [possession], is entitled to retain possession."

That case has been very often cited, and it has fixed the status of the vendor and the defaulting vendee in land sales in Texas. As said in Hale v. Baker, 60 Tex. 217:

"It has been held in a long series of decisions in this state that, where the contract for the sale of land is executory, as in the instance of the sale and conveyance of land by deed which reserves the vendor's lien, or where the deed absolute on its face is executed contemporaneously with a mortgage given on the land by the vendee to secure the purchase money, the superior title remains with the vendor, notwithstanding the deed, and in default of payment of the purchase money he may recover the land from the vendee."

See, also, recent case of Cathey v. Weaver, 111 Tex. 515, 242 S. W. 447.

There is no testimony tending to show that P. Cohn and Harmon owned the land together, and that the deed was made to Cohn, but in reality Harmon owned an interest in it. The contracts show the only relation occupied by the parties towards each other, that of vendor and vendee. The first contract was supplanted and nullified by the second contract, and upon the latter all the rights and interest of Harmon and Duncan must rest.

Philip Cohn conveyed some land to Harmon and some to purchasers direct, and the fact that this was done emphasized the notice to all purchasers that Harmon had no right or authority to sell the land, and that, if any one took conveyances from him, he did it at his own peril. There was no evidence that the appellees made any effort to obtain deeds from Philip Cohn. Cohn never made any deeds to any one until he had investigated and was satisfied with the terms of sale.

[7] It was incumbent on appellants, as claimed by appellees, to show their right to

recover the land, and when they showed legal title in the estate they had lifted their burden, and it became a part of appellees to show a superior title in themselves.

[8] Much alleged testimony as to parol agreements with P. Cohn and other matters was admitted, which should not have been. The contract in writing fixed the status of the land and the parties, and evidences merely agreement by Philip Cohn to convey certain land to Harmon and Duncan, if certain conditions were complied with, and certain acts performed. The contract was breached by the vendees. No deed was given or could be demanded under the terms of the contract, the superior title to the land remained in Cohn, and his representatives had the right to sue for and recover the land belonging to his estate. Harmon showed no claim that was enforceable, and the court did not err in instructing a verdict against him.

We have not attempted to discuss the numerous assignments in the bulky brief filed by appellants, but have considered what we deem to be the salient questions in the case.

Appellees Martin, Osborne, Sutherland, and Henry failed to make out a case of improvements in good faith. They knew from the record that Harmon had no title to the land, and could not convey a title to them. It did not require legal learning to ascertain this fact, but the exercise of ordinary care would have revealed the truth of the situation. Neither of them testified as to circumstances showing good faith. They were charged with the knowledge that Harmon could not give a title to the land. House v. Stone, 64 Tex. 677. They made no effort to show what they believed about the title or the value of their improvements. They failed to testify on any matter.

The judgment will be affirmed as to P. J. Harmon, but reversed as to J. B. Osborne, W. A. Henry, J. L. Sutherland, and Arthur B. Martin, and judgment here rendered that appellants recover of them the land sued for and claimed by them, and that they and Harmon pay all the costs in this behalf expended.